# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
               *Plaintiff-Appellant,*

v.

DAVID RAY NEWMAN,
               *Defendant-Appellee.*

Nos. 10-10430
10-10431
D.C. Nos.
2:09-cr-00426-JCM-
PAL-1
2:10-cr-00003-JCM-
PAL2

UNITED STATES OF AMERICA,
               *Plaintiff-Appellant,*

v.

JON TEDESCO,
               *Defendant-Appellee.*

No. 10-10444
D.C. No.
2:09-cr-00472-JCM-
LRL-1
OPINION

Appeals from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
August 10, 2011—San Francisco, California

Filed October 28, 2011

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain and Susan P. Graber,
Circuit Judges.

Opinion by Judge Graber

19637

**COUNSEL**

Robert Ellman, Appellate Chief and Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellant.

Dan C. Maloney, Reno, Nevada, and Michael K. Powell, Assistant Federal Public Defender, Reno, Nevada, for the defendants-appellees.

## OPINION

GRABER, Circuit Judge:

Defendants David Ray Newman and Jon Tedesco committed crimes that subject them to criminal forfeiture: Newman robbed two banks, and Tedesco conspired to defraud banks. Defendants each pleaded guilty and agreed to forfeit a specific amount of money. The district court nevertheless eliminated criminal forfeiture or reduced it to a trivial amount. The government timely appeals. Because the district court's reasoning in the two cases is substantially similar, we issue this joint opinion.

## FACTUAL AND PROCEDURAL HISTORY

A.  *Newman*

Newman robbed a bank and stole $1,152. The government indicted him on one count of violating 18 U.S.C. § 2113(a). The indictment included a forfeiture allegation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), for a criminal money judgment up to $1,152.

While on pretrial release, Newman robbed another bank and, this time, stole $3,950. The government again indicted him. The indictment included a forfeiture allegation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), for a criminal money judgment up to $3,950.

The parties entered into a plea agreement in which Newman "knowingly and voluntarily agree[d] to . . . the criminal forfeiture of an *in personam* criminal forfeiture money judgment of $3,950 . . . and an *in personam* criminal forfeiture money judgment of $1,152" for a total of $5,102. After the plea hearing, Newman filed a "brief regarding forfeiture of assets which are not proceeds of [the] offense."

At sentencing, the district court decided not to order criminal forfeiture. The government filed a motion for reconsideration, which the district court denied. The district court entered judgment against Newman in both cases but did not order forfeiture of any amount. The government sought, and the district court ordered, restitution of an amount less than $5,102 because some of the money had been returned to one of the banks after Newman was caught.[1] The government timely appeals.

B.  *Tedesco*

Tedesco entered into a conspiracy "to obtain money and property by using straw buyers to apply for mortgage loans from federally insured financial institutions to purchase properties." The government charged him with one count of conspiracy to violate 18 U.S.C. § 1344. The criminal information included a forfeiture allegation, pursuant to 18 U.S.C. § 982(a)(2)(A), for a criminal money judgment up to $1 million.

The parties entered into a plea agreement in which Tedesco "knowingly and voluntarily agree[d] to . . . the criminal forfeiture of a money judgment of $1,000,000." Tedesco pleaded guilty, and the district court entered a preliminary order of forfeiture of $1 million against Tedesco.

At sentencing, the district court stated that, contrary to the preliminary order, it would not impose any amount of forfeiture. Ultimately, however, the district court entered a judgment that included a final order of forfeiture of $100. The government sought, and the district court ordered, restitution

---

[1]There is some discrepancy in the record as to how much money was returned to the bank in the second case, but that discrepancy is not relevant to this appeal. Relevant here, the police seized at least some of the proceeds from the robberies and returned at least some of that money to the bank.

of an amount less than $1 million because the loss to the financial institution from the specified property transaction was less than $1 million. The government timely appeals.

## DISCUSSION[2]

### A. *Mandatory Criminal Forfeiture*

Two distinct statutory provisions for criminal forfeiture apply here. As discussed below, both statutes provide that, when the government meets the applicable requirements, the district court must impose criminal forfeiture in the amount of the "proceeds" of the crime.

**[1]** In Newman's case, the government included a criminal forfeiture allegation pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c). Section 981, as its title states, typically governs "civil forfeiture[s]," not criminal forfeitures. *See generally United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011) (describing the differences between civil forfeiture and criminal forfeiture). But 28 U.S.C. § 2461(c) permits the government to seek *criminal* forfeiture whenever civil forfeiture is available *and* the defendant is found guilty of the offense:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the

---

[2]We review de novo the district court's interpretation of federal forfeiture law. *United States v. Casey*, 444 F.3d 1071, 1073 (9th Cir. 2006).

Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code.

The Eleventh Circuit has explained: "Congress enacted 28 U.S.C. § 2461(c), effective August 23, 2000, to make criminal forfeiture available in every case that the criminal forfeiture statute does not reach but for which civil forfeiture is legally authorized." *United States v. Padron*, 527 F.3d 1156, 1161-62 (11th Cir. 2008); *accord United States v. Day*, 524 F.3d 1361, 1375-77 (D.C. Cir. 2008); *United States v. Jennings*, 487 F.3d 564, 584-85 (8th Cir. 2007); *United States v. Edelkind*, 467 F.3d 791, 798-800 (1st Cir. 2006); *United States v. Vampire Nation*, 451 F.3d 189, 198-201 (3d Cir. 2006).

**[2]** Relevant to Newman, 18 U.S.C. § 981(a)(1) states:

The following property is subject to forfeiture to the United States:

. . . .

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [specified sections] of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

In turn, 18 U.S.C. § 1956(c)(7) provides that "the term 'specified unlawful activity' means— . . . (D) an offense under [many specified sections, including] section 2113 or 2114 (relating to bank and postal robbery and theft)." Because Newman pleaded guilty to violating 18 U.S.C. § 2113, criminal forfeiture is available pursuant to § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

**[3]** In Tedesco's case, the government included a criminal forfeiture allegation pursuant to 18 U.S.C. § 982, which is

titled "criminal forfeiture."³ Section 982(a)(2) states, in relevant part:

> The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate—
>
> (A) section . . . 1344 of this title . . . .
>
> . . . . .
>
> shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

Because Tedesco pleaded guilty to conspiracy to violate 18 U.S.C. § 1344, he is subject to criminal forfeiture pursuant to § 982(a)(2).

[4] Sifting the statutory provisions, both statutes require that the district court "shall order" forfeiture. 18 U.S.C. § 982(a)(2); 28 U.S.C. § 2461(c). The mandatory nature of that phrase is clear: When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits. *See United States v. Casey*, 444 F.3d 1071, 1076 (9th Cir. 2006) ("The statute mandates that a defendant forfeit a very specific amount—the proceeds of his criminal activity."); *id.* at 1074 (referring to criminal forfeiture as "the mandatory forfeiture sanction Congress intended"); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) (holding that, by using the phrase "shall order" in a different forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied").

---

³In the criminal information against Tedesco, the government also included a forfeiture allegation under § 981, discussed in text above. On appeal, though, the government discusses only § 982 in Tedesco's case.

**[5]** Criminal forfeiture is separate from the discretionary sentencing considerations under 18 U.S.C. § 3551. Unlike a fine, which the district court retains discretion to reduce or eliminate, the district court has no discretion to reduce or eliminate mandatory criminal forfeiture. *See* 18 U.S.C. § 3554 ("The court . . . shall order, *in addition to* the sentence that is imposed pursuant to the provisions of section 3551, that the defendant forfeit property to the United States . . . ." (emphasis added)); 28 U.S.C. § 2461(c) (providing that, for all criminal forfeitures, "the court shall order the forfeiture of the property . . . pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18"). Forfeiture is not a "disguised fine" such that the rules applicable to fines apply equally to forfeiture. *See Casey*, 444 F.3d at 1076 ("We disagree that allowing money judgments in forfeiture cases erases the distinctions between fines and forfeitures.").

**[6]** To be sure, the Supreme Court has recognized that there are constitutional limits to forfeiture. For example, prosecutorial misconduct amounting to a due process violation limits the government's power to seek criminal forfeiture. *Libretti v. United States*, 516 U.S. 29, 42-43 (1995) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 634 (1989)). And criminal forfeiture orders are subject to the constitutional limit defined by the Excessive Fines Clause of the Eighth Amendment. *United States v. Bajakajian*, 524 U.S. 321 (1998); *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir. 1999). But those constitutional limits, not at issue here,[4] do not permit the district court to exercise discretion when issuing criminal forfeiture orders. To the extent that the district court sought to reduce or eliminate criminal forfeiture as part of its sentencing discretion, the district court erred.

---

[4]The district court occasionally mentioned the Excessive Fines Clause but never engaged in the necessary constitutional analysis. *See Bajakajian*, 524 U.S. at 334-44 (describing the analysis). On appeal, neither Defendant asserts that the district court's forfeiture orders implicate constitutional considerations.

**[7]** Criminal forfeiture is also separate from restitution, which serves an entirely different purpose. "Congress conceived of forfeiture as *punishment* for the commission of various [crimes]." *Libretti*, 516 U.S. at 39 (emphasis added). "The purpose of restitution . . . , however, is not to punish the defendant, but to *make the victim whole again* by restoring to him or her the value of the losses suffered as a result of the defendant's crime." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010) (emphasis added) (internal quotation marks and brackets omitted). Accordingly, we have held that "defendants may be required to pay restitution and forfeit the same amounts." *United States v. Boulware*, 384 F.3d 794, 813 (9th Cir. 2004). Applying that rule in *Boulware*, we held that the defendant was not entitled to a credit for the amount that he had repaid toward the fraudulently obtained loan. *Id.* In the absence of a statute authorizing a reduction in forfeiture, the district court may not reduce forfeiture because of an order of restitution to a victim or because the victim already has been made whole.[5] *See id.* at 813-14 (noting that 18 U.S.C. § 981(a)(2)(C) reduces the amount of forfeiture in certain other circumstances); *Casey*, 444 F.3d at 1076 n.4 (noting that 18 U.S.C. § 982(b)(2) eliminates forfeiture in certain other circumstances).

**[8]** Although Defendants must pay both restitution and criminal forfeiture, that result is not an impermissible "double recovery." We agree with the Tenth Circuit's recent explanation:

> The district court erred in concluding that it could equitably reduce the forfeiture amount owed by

---

[5]At oral argument, the government clarified that, where there are limited funds, the government will not seek to collect on a criminal forfeiture judgment until restitution has been fully satisfied; that is, restitution to the victim takes priority over criminal forfeiture to the government. *Cf.* 18 U.S.C. § 3664(i) ("In any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution.").

McGinty in light of the amount he was also required to pay to the bank in restitution. Criminal forfeiture and restitution are separate remedies with different purposes. . . . Because restitution and forfeiture are distinct remedies, ordering both in the same or similar amounts does not generally amount to a double recovery. . . . Paying restitution plus forfeiture at worst forces the offender to disgorge a total amount equal to twice the value of the proceeds of the crime. Given the many tangible and intangible costs of criminal activity, this is in no way disproportionate to the harm inflicted upon government and society by the offense.

*United States v. McGinty*, 610 F.3d 1242, 1247-48 (10th Cir. 2010) (paragraph break, citations, internal quotation marks, and brackets omitted); *see also United States v. Leahy*, 464 F.3d 773, 793 n.8 (7th Cir. 2006) ("While we recognize to the untrained eye, this might appear to be a 'double dip,' restitution and forfeiture serve different goals, and we have approved of [ordering both restitution and forfeiture] in the past."); *accord United States v. Taylor*, 582 F.3d 558, 565-66 (5th Cir. 2009) (per curiam),[6] *cert. denied*, 130 S. Ct. 1116 (2010). To the extent that the district court reduced or eliminated criminal forfeiture because of restitution, the district court erred.

B.  *Form of Criminal Forfeiture*

**[9]** Federal Rule of Criminal Procedure 32.2 makes clear that, at least where the proceeds of the criminal activity are money, the government may seek a money judgment as a

---

[6]*Taylor* noted that an issue of double recovery may arise where the government itself was the victim and therefore would receive both payments. 582 F.3d at 566. That issue is not present in either of these cases, in which the victims are private financial institutions. We therefore need not and do not reach that issue.

form of criminal forfeiture: "*If the government seeks forfeiture of specific property*, [certain results follow]. *If the government seeks a personal money judgment*, the court must determine the amount of money that the defendant will be ordered to pay." Rule 32.2(b)(1)(A) (emphases added); *see* 28 U.S.C. § 2461(c) (providing that "the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant [to] the Federal Rules of Criminal Procedure"). That is, the government may seek the forfeiture of specific property, or the government may seek a money judgment. We previously have held that a money judgment is a proper form of criminal forfeiture:

> Federal Rule of Criminal Procedure 32.2 supports this position [that money judgments are available as a form of criminal forfeiture] and differentiates between instances in which the government "seeks forfeiture of specific property" or "a personal money judgment." Fed. R. Crim. P. 32.2(b)(1). The Advisory Committee Notes clarify that "[s]ubdivision (b)(1) recognizes that there are different kinds of forfeiture judgments in criminal cases. One type is a personal judgment for a sum of money; another is a judgment forfeiting a specific asset." Fed. R. Crim. P. 32.2(b) advisory committee's notes.

*Casey*, 444 F.3d at 1076 (second alteration in original). Other courts unanimously have agreed. *See McGinty*, 610 F.3d at 1246 (collecting cases and stating: "Although the criminal forfeiture statute does not explicitly refer to money judgments, our sister circuits have uniformly recognized that money judgments representing the unlawful proceeds are appropriate."). When the government seeks a money judgment, Rule 32.2(b) does not permit the court to do anything other than "determine the amount of money that the defendant will be ordered to pay," which is specified by statute.

[10] Rule 32.2(e) allows the government also to seek "substitute property." *See* 21 U.S.C. § 853(p) (permitting the sub-

stitution of property in some circumstances). That provision carries its own set of procedural and substantive requirements before the court may order the forfeiture of substitute property. But, here, the government did not seek "substitute property" under Rule 32.2(e). The government sought only a money judgment as a form of criminal forfeiture under Rule 32.2(b). Because the government sought a money judgment in the first instance, there was no need to seek *substitute* property. *See United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) ("A criminal forfeiture order may take several forms. First, the government is entitled to an *in personam* judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense. Second, to the extent the government can trace any of the proceeds to specific assets, it may seek the forfeiture of those assets directly . . . . Third, if as a result of some act or omission of the defendant, the government cannot trace the proceeds to specific assets, it may seek the forfeiture of [substitute property]."). Accordingly, the procedural and substantive requirements of Rule 32.2(e) did not apply.

### C. *Statutory Limits to Criminal Forfeiture*

**[11]** "The statute mandates that a defendant forfeit a very specific amount—the proceeds of his criminal activity." *Casey*, 444 F.3d at 1076. The statutory provisions applicable here permit forfeiture of all property obtained, directly or indirectly, from the commission of the crime. *See* 18 U.S.C. § 981(a)(2)(A) (defining "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense"); *id.* § 982(a)(2) (requiring forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of [the crime]").

**[12]** We have explained that the amount of "proceeds" does not mean just the amount of money that the defendant

has when he or she is apprehended. Congress sought to punish equally the thief who carefully saves his stolen loot and the thief who spends the loot on "wine, women, and song." *See Casey*, 444 F.3d at 1073-74 (quoting the "oft-quoted passage [by] the Seventh Circuit . . . that 'a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from . . . crime' " and therefore must disgorge those funds "regardless of whether those funds were still in his possession" (ellipsis in original) (quoting *United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir. 1985)). "Imposing a money judgment despite [a criminal's] lack of assets at sentencing negates any benefit he may have received from the money, ensuring that, in the end, he does not profit from his criminal activity." *Id.* at 1074. This holds true even if the criminal spent some of the proceeds as part of the criminal enterprise. *See id.* at 1076 n.4 (holding that the defendant must forfeit the full $7,000 that he received from the drug transaction even though he paid his drug boss $6,800 and "profited" only $200). "Requiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent." *Id.* at 1074.

1. *Newman*

**[13]** We therefore reject Newman's arguments that he is entitled to a reduction in criminal forfeiture. Because he was caught soon after the second robbery, Newman never spent any of the stolen money. But, under any definition of "proceeds," and particularly the broad definition applicable here, the "proceeds" of his bank robbery clearly equal the amount that he stole. To the extent that the district court found that the "proceeds" from Newman's crimes were anything other than $5,102, the district court clearly erred.

**[14]** Because the parties do not dispute that Newman stole $5,102, the district court erred in failing to enter an order of criminal forfeiture in that amount. We vacate the district court's judgment and remand with instructions to reenter judgment with an order of criminal forfeiture in the amount of $5,102.[7]

## 2. *Tedesco*

**[15]** We similarly reject Tedesco's arguments that he is entitled to a reduction in criminal forfeiture. It does not matter that he personally profited very little or that the banks eventually recovered part of the loan principals. *See Boulware*, 384 F.3d at 813 (rejecting the argument that the defendant was entitled to an offset for the amounts that he repaid the bank from a loan obtained by making false statements). For purposes of criminal forfeiture, the "proceeds" of a fraudulently obtained loan equal the amount of the loan. *Id.* Moreover, because Tedesco entered into a conspiracy, the "proceeds" of his crime equal the total amount of the loans obtained by the conspiracy as a whole.[8] *United States v. Olguin*, 643 F.3d 384, 398-400 (5th Cir. 2011), *petitions for cert. denied*, ___ U.S.L.W. ___ (U.S. Oct. 11, 2011) (No. 11-6184), *and* ___ U.S.L.W. ____ (U.S. Oct. 11, 2011) (No. 11-6294); *United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010); *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996). To the extent that the district court held that the "proceeds" from

---

[7]For simplicity, we refer throughout this opinion to a single money judgment in the amount of $5,102. We leave it to the district court to determine whether a single money judgment would be proper or whether two money judgments, totaling $5,102, would be proper because the crimes were indicted separately.

[8]The government asserts that it may not, and will not, seek forfeiture from co-conspirators that exceeds the total amount of "proceeds." For example, if the proceeds from a conspiracy equal $10,000, the government may seek forfeiture up to $10,000 from each conspirator, but the sum of the forfeitures may not exceed $10,000. Neither the district court nor Defendants addressed this issue; neither do we.

Tedesco's crime were anything else, the district court applied the wrong legal test.

The parties dispute the significance of the plea agreement, in which Tedesco agreed to forfeit the full $1 million sought by the government. Because the parties themselves agreed, the government understandably did not put into evidence extensive documentation supporting its assertion that the proceeds from Tedesco's crime equaled or exceeded $1 million. Tedesco argues that the government failed to meet its evidentiary burden of establishing that the proceeds were at least $1 million. The government counters that the plea agreement was sufficient and necessarily conclusive evidence. Both parties overreach.

The district court may rely on factual statements in the plea agreement. *See* Fed. R. Crim. P. 32.2(b)(1)(B) ("The court's determination may be based on evidence already in the record, including any written plea agreement . . . ."). In most cases, an admission by the defendant suffices to prove the factual basis for criminal forfeiture. *See Libretti*, 516 U.S. at 43 ("[W]e need not determine the precise scope of a district court's independent obligation, if any, to inquire into the propriety of a stipulated asset forfeiture embodied in a plea agreement."). Because the parties stipulated to an amount of forfeiture and agreed to its payment, the government did not have an independent obligation to offer detailed proof of that stipulated fact.

But the existence of a stipulated amount of forfeiture does not necessarily suffice. The Supreme Court has expressly recognized the potential for abuse in situations like these: "We do not mean to suggest that a district court must simply accept a defendant's agreement to forfeit property, particularly when that agreement is not accompanied by a stipulation of facts supporting forfeiture, or when the trial judge for other reasons finds the agreement problematic." *Id.* The district court has an independent duty to "determine the amount of money that the

defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Rule 32.2(b)(1)(B). If the court has good reason to believe that the proposed forfeiture order exceeds the amount authorized by statute (here, "proceeds"), then the court, in its discretion, may inquire into the factual basis for the proceeds.

Here, the district court expressed a wide variety of policy and legal reasons for reducing the criminal forfeiture amount to $100. But it is clear that, as a *factual* matter, the "proceeds" were more than $100. On the other hand, it is not clear from the record that the "proceeds" of the conspiracy were at least $1 million. The district court never made the required factual findings, and there may be insufficient evidence in the record on this point.

In a similar case, the Tenth Circuit considered a district court's failure to enter an order of criminal forfeiture for policy and legal reasons. After rejecting those arguments, the Tenth Circuit remanded to the district court to make the necessary findings:

> The government requests that we direct the district court to enter a forfeiture money judgment in the amount of $325,459.55. Although we agree that the government is entitled to a money judgment, we do not address the proper amount of the requisite forfeiture order. The district court made no findings regarding the amount of the proceeds of McGinty's misapplication of bank funds or what property was derived from those proceeds. The district court is in the best position to make these factual determinations by conducting any necessary factfinding and

> considering the effect of the plea agreement, as well as the effect of any [other proceeds].

*McGinty*, 610 F.3d at 1249.

We adopt a similar approach here. We vacate the district court's entry of an order of criminal forfeiture of $100, and we remand. On remand, the district court first should consider whether there is a reason to believe that the statements in the plea agreement are not sufficient evidence of "proceeds." If the district court has no reason to question the accuracy of the stipulated amount, then the court should enter an order of criminal forfeiture in the agreed amount of $1 million. If the district court has a reason to question the accuracy of the stipulated amount, then the court should take evidence on the amount of the proceeds of Tedesco's crime. We leave the specifics of any such further proceedings to the sound discretion of the district court. The district court then shall enter an order of criminal forfeiture in the amount of the "proceeds" of Tedesco's crime.[9]

## CONCLUSION

[16] We vacate and remand with instructions. In Newman's case, the district court shall enter a criminal forfeiture money judgment of $5,102. In Tedesco's case, the district court shall either enter a criminal forfeiture money judgment of $1 million or, if there is a reason to doubt the accuracy of that agreed amount, follow the procedure described above and enter a criminal forfeiture money judgment in the amount of the "proceeds" of Tedesco's crime, not to exceed $1 million.

**VACATED and REMANDED with instructions.**

---

[9]The government concedes that, regardless the total amount of proceeds, the amount of forfeiture cannot *exceed* the amount that the government sought in the criminal information, $1 million.