**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SAMUEL DAVIS,
    *Defendant-Appellant*.

</td>
<td>

No. 11-10584

D.C. No.
2:09-cr-00078-
JCM-RJJ-1

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
September 11, 2012—San Francisco, California

Filed February 1, 2013

Before: J. Clifford Wallace, Sidney R. Thomas, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wallace;
Concurrence by Judge Berzon

**SUMMARY**[*]

**Criminal Law**

The panel affirmed the district court's order requiring the defendant, who was convicted of conspiracy and money laundering, to forfeit $1.29 million and to pay about $95,000 in restitution to the FBI for funds expended in the operation that led to the defendant's arrest.

The panel rejected the defendant's argument that the forfeiture amount should be offset by his restitution amount to avoid a double recovery by the government. The panel held that even if the same government entity will receive both forfeiture and restitution, there is no double recovery because the two payments represent different types of funds: punitive and compensatory.

Concurring, Judge Berzon (joined by Judge Thomas) wrote separately to note the narrowness of the holding. She wrote that the panel can leave for another day the unraised question whether a defendant who essentially is paid a commission on other people's money he handles as part of an illegal scheme can be made to "forfeit" funds that passed through his hands but were never his.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Todd M. Leventhal (argued), Leventhal and Associates, PLLC, Las Vegas, Nevada, for Defendant-Appellant.

Robert L. Ellman, Daniel D. Hollingsworth (argued), Assistant United States Attorneys, Las Vegas, Nevada, for Plaintiff-Appellee.

**OPINION**

WALLACE, Senior Circuit Judge:

Davis appeals from the portion of his sentence that imposes forfeiture and restitution. Davis pleaded guilty to one count of conspiracy to commit money laundering and thirty counts of money laundering under 18 U.S.C. § 1956(h) and aiding and abetting under 18 U.S.C. § 1956(a)(3)(A). He was ordered to forfeit $1.29 million and also to pay about $95,000 in restitution to the Federal Bureau of Investigation (FBI) for funds expended in the operation that led to his arrest. On appeal, he argues that requiring him to pay both restitution and forfeiture will result in an impermissible double recovery for the government. He therefore requests that his forfeiture amount be offset by his restitution amount. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I.**

Undercover FBI agents asked Davis to help them launder money, which they represented was stolen from Wachovia Bank. Davis received the money and engaged in various financial transactions intended to conceal the nature and

source of the "stolen money." He took a percentage of the funds as compensation. After working alone for several months, he enlisted the aid of his co-defendant, Shawn Rice.

By the time of the filing of the Indictment, agents had provided Davis and Rice with a total of $1,293,782. Davis had taken $73,782 for his work, and Davis and Rice had transferred $1,198,000 back to the agents.

The government sought a criminal in personam forfeiture judgment of $1,290,000 against Davis pursuant to 18 U.S.C. § 981, 28 U.S.C. § 2641, and 18 U.S.C. § 982. The district court initially denied the in personam amount, but did order forfeiture of $2,597.50 seized from two bank accounts in Davis's name. Davis was also ordered to pay $95,782 in restitution to the FBI. After we decided *United States v. Newman*, 659 F.3d 1235 (9th Cir. 2011), which held that a district judge does not have discretion to reduce or eliminate a criminal forfeiture unless required by statute or the Constitution, *id.* at 1240, the government filed a Rule 35 motion requesting amendment to the forfeiture judgment. On the same day the motion was filed, the district court revised its forfeiture order to include the requested in personam judgment.

## II.

Davis's only argument on appeal is that his forfeiture amount should be offset by his restitution amount to avoid a double recovery by the government. We observe at the outset that the parties disagree over whether we should apply a de novo or plain error standard of review to this claim. However, we need not decide which position is correct because we would affirm under either standard, as explained below. *See*

*United States v. Upshaw*, 226 F.3d 1101, 1102 (9th Cir. 2000) ("Given the basis for our resolution of this appeal, we need not decide what standard of review applies. Under either standard, we affirm the district court").

### III.

Davis argues that, because the FBI is essentially a part of the Department of Justice (DOJ), the two entities are functionally the same. Thus, he argues, requiring him to pay forfeiture to the DOJ and restitution to the FBI will result in an impermissible double recovery for the government. Davis has not raised the issue of whether the FBI is properly a "victim" under the restitution statute, and we therefore do not consider that question. *See United States v. Salcedo-Lopez*, 907 F.2d 97, 98 (9th Cir. 1990).

As we recognized in *Newman*, forfeiture and restitution serve different purposes or goals. 659 F.3d at 1241. Forfeiture is imposed as punishment for a crime; restitution makes the victim whole again. *Id*. We agreed with the Court of Appeals for the Tenth Circuit that "'[c]riminal forfeiture and restitution are separate remedies with different purposes.'" *Id.* (quoting *United States v. McGinty*, 610 F.3d 1242, 1247 (10th Cir. 2010)). Thus, we stated that requiring a defendant to pay both forfeiture and restitution would not, on its own, result in double recovery. However, because the victims of the crimes in that case were private financial institutions, we did not address the issue of whether payment of both forfeiture and restitution to *the government* created an impermissible double recovery. *Id.* at 1242 n.6. We now address that question.

Other circuits have considered whether an offset is warranted to avoid double recovery when government entities

will receive both forfeiture and restitution. *See United States v. Taylor*, 582 F.3d 558 (5th Cir. 2009); *United States v. Ruff*, 420 F.3d 772 (8th Cir. 2005); *United States v. Emerson*, 128 F.3d 557 (7th Cir. 1997). Those courts have focused their analysis on whether the two government recipients were "distinct entities" in order to determine whether a double recovery would occur. *See Taylor*, 582 F.3d at 566 (considering whether the Federal Emergency Management Agency and the DOJ are distinct); *Ruff*, 420 F.3d at 775–76 (considering whether a state narcotics task force and the state narcotics division are distinct); *Emerson*, 128 F.3d at 567–68 (considering whether the United States Postal Service and the DOJ are distinct). These cases hold or imply that if two entities are related closely enough, restitution or forfeiture should be reduced. We disagree with this approach.

Even if the same government entity will receive both forfeiture and restitution, there simply is no double recovery. The two payments represent different types of funds: punitive and compensatory. They are different in nature, kind, and purpose. Money levied as a punitive fine does not "double" the money intended to compensate a loss anymore than the addition of apples to one's store doubles the orange stock. Nor is the collection of forfeiture and restitution based on the same crime an impermissible doubling insofar as a defendant is concerned. *Newman*, 659 F.3d at 1241. It is therefore irrelevant to what extent the FBI and the DOJ are distinct entities, and the district court did not clearly err when it did not offset Davis's forfeiture amount.

Our conclusion finds further support in the statutes governing restitution and forfeiture. As *Newman* held, forfeiture is mandatory under 18 U.S.C. § 982 and 18 U.S.C. § 2461(c). 659 F.3d at 1240. The statutory scheme, which

recognizes that the government can be a "victim" for purposes of restitution, 18 U.S.C. § 3664(i), expressly allows offsets against forfeiture or restitution in some situations. For example, 18 U.S.C. § 981(a)(2)(C) provides: "In cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim." Likewise, under 18 U.S.C. § 3664(j)(2), any amount the victim of a crime receives from a restitution order will be reduced by "any amount later recovered as compensatory damages for the same loss by the victim." However, there is no provision that authorizes an offset solely because the government will receive both restitution and forfeiture. Because Congress clearly knew how to provide for offset in other situations, we conclude it did not intend it here.

We therefore hold that Davis was not entitled to an offset, regardless of the relationship between the forfeiture and restitution recipients. The district court committed no error, plain or otherwise.

**AFFIRMED**.

---

BERZON, Circuit Judge, with whom THOMAS, Circuit Judge, joins, concurring:

I concur in the court's opinion. I write separately to note the narrowness of our holding.

The purpose of criminal forfeiture is to force guilty defendants to "disgorge their ill-gotten gains." *United States v. Newman*, 659 F.3d 1235, 1243 (9th Cir. 2011) (internal quotation marks omitted). To that end, Congress has articulated a broad conception of what "gains" may be subject to a court's forfeiture order. *See, e.g.*, 21 U.S.C. § 853(a) (defining "[p]roperty subject to criminal forfeiture" as "(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation," or "(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation."); 18 U.S.C. § 981(a)(1) (defining property "subject to forfeiture" to include "[a]ny property . . . involved in a transaction or attempted transaction in violation of section 1956 . . . or any property traceable to such property," and " [a]ny property . . . which constitutes or is derived from proceeds traceable to [such offense]"); *id.* § 982(a)(1) (requiring courts to order persons convicted of money laundering under 18 U.S.C. § 1956 to "forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property").

In interpreting those statutes, we have similarly expressed an expansive view of forfeitable property. *See, e.g.*, *Newman*, 659 F.3d at 1243 ("'Requiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent.'")

(quoting *United States v. Casey*, 444 F.3d 1071, 1074 (9th Cir. 2006)).

Notwithstanding our broad understanding of what property courts may order to be forfeited, fundamentally, forfeiture is about losing or giving up *that* property. *See* Webster's Collegiate Dictionary 491 (11th ed. 2003) (defining "forfeiture" as "the loss of property or money"); Black's Law Dictionary (defining "forfeiture" as "divestiture of property without compensation"). And, it would seem axiomatic that one must gain or possess property before one can lose it. Put simply, *by definition* one cannot "forfeit" that which he never had in the first place.

Here, the district court ordered Davis to forfeit $1,290,000. This amount represented nearly the total amount of money Davis and Rice laundered for undercover FBI agents between March 2008 and March 2009. It is undisputed that Davis kept for himself as commission only $73,782 of the approximately $1.29 million in laundered funds. Davis has not challenged the district court's order on the grounds that forfeiture of the full $1.29 million was improper because he only took a percentage of that amount as compensation.

Our opinion (correctly) does not address that issue; we hold only that Davis was not entitled to an offset of his forfeiture amount. I am somewhat dubious that the $1.29 million of other people's money that Davis laundered is an appropriate measure of the amount that could be forfeited. But as the issue has not been raised, we can leave to another day the question whether a defendant who essentially is paid

a commission on other people's money he handles as part of an illegal scheme can be made to "forfeit" funds that passed through his hands but, it appears, were never his.