
FILED

NOT FOR PUBLICATION

DEC 17 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-30160 |
| Plaintiff - Appellee, | D.C. No. 2:13-cr-00016-RAJ-3 |
| v. | |
| WARREN LANCE WILDER, | MEMORANDUM* |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-30202 |
| Plaintiff - Appellee, | D.C. No. 2:13-cr-00016-RAJ-3 |
| v. | |
| WARREN LANCE WILDER, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted December 8, 2015
Seattle, Washington

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Before: McKEOWN and TALLMAN, Circuit Judges and GLEASON,** District Judge.

Warren Lance Wilder appeals his conviction and sentence for mail fraud and conspiring to traffic in counterfeit goods. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

1. The district court held an evidentiary hearing and properly admitted Wilder's confession to Department of Homeland Security agents after finding it voluntary. The district court's factual findings are not clearly erroneous. On de novo review of the application of law to these facts, the district court correctly denied the motion to suppress his statements. Wilder argues that his confession was involuntary because the agents "deliberately prey[ed]" on his family ties to solicit his cooperation in violation of *United States v. Tingle*, 658 F.2d 1332, 1336–37 (9th Cir. 1981). But unlike the defendant in *Tingle*, Wilder is an educated, middle-aged man who was interviewed in the backyard of his home, and for part of the interview his wife was in attendance. Under the totality of the circumstances, we cannot say that Wilder's will was overborne at the time he confessed and after his wife had urged him to "tell them what you know." *See*

---

** The Honorable Sharon L. Gleason, United States District Judge for the District of Alaska, sitting by designation.

*Dickerson v. United States*, 530 U.S. 428, 434 (2000). The conduct of the agents in this interview did not amount to impermissible coercion.

2. Wilder also argues that his due process rights were violated when the government destroyed approximately 6,500 computer cables reasonably believed to be counterfeit. But these cables were only potentially exculpatory. *See California v. Trombetta*, 467 U.S. 479, 487–89 (1984). The government does not contest that Connectzone, his employer, sold legal generics in addition to counterfeits. Nor would it change Wilder's sentence if he proved that some of the destroyed cables were real because his sentence was based on an artificially low number of infringing items. Because the evidence was just potentially exculpatory, Wilder's due process rights are only violated if the government acted in bad faith. *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012). The district court did not clearly err in finding the government destroyed the cables in good faith pursuant to established U.S. Customs forfeiture procedures. *See id.*; *United States v. Heffington*, 952 F.2d 275, 281 (9th Cir. 1991).

3. Any error in calculating the infringing amount for purposes of sentencing was harmless. *See United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010). Wilder argues that the district court should have used the wholesale price, rather than the manufacturer's suggested retail price (MSRP), which is up to 42% more.

3

But even discounting the district court's MSRP figures by 42%, the infringing amount is still above $400,000, triggering the same 14-level enhancement under U.S.S.G. § 2B5.3 (2013). Wilder points to estimates that the counterfeit goods confiscated on August 8, 2011, were valued between $396,083 and $397,451. But these estimates are based on the price of *counterfeit* cables (not authentic goods), exclude the government's July 2012 seizure (which had an MSRP of $125,000), and exclude all other suspected counterfeit sales from the nine year conspiracy. Thus, the record shows by clear and convincing evidence that even using wholesale prices, a conservative estimate of the infringing amount is still above $400,000.

4. Wilder's arguments regarding the amount of the forfeiture judgment are foreclosed by *United States v. Newman*, 659 F.3d 1235 (9th Cir. 2011). Wilder's ability to pay and limited personal profits are irrelevant where he was convicted of knowingly participating in a conspiracy, and he took home a salary and earned sales commissions from his participation. *Id.* at 1243–44. We are also satisfied that the forfeiture judgment is not grossly disproportionate to Wilder's crime, as it represents a conservative estimate of the counterfeit profits from only four years of the conspiracy, and the harm caused by Wilder's offense is much greater than the harm addressed in *United States v. Bajakajian*, 524 U.S. 321 (1998).

**AFFIRMED**.