**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DWIGHT RAMON POLLARD,
*Defendant-Appellant*.

No. 15-10246

D.C. No.
2:08-cr-00332-JCM-GWF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted September 13, 2016
San Francisco, California

Filed March 8, 2017

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and John R. Tunheim,* Chief District Judge.

Opinion by Judge Gould

---

* The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's $4,128,554 forfeiture order in a case in which the defendant pleaded guilty to one count of aggravated identity theft and aiding and abetting, and one count of possessing a false identification document with the intent to defraud the United States.

The panel held that when a conviction for aggravated identity theft is premised on a proven or admitted violation of a predicate offense that is enumerated in the civil forfeiture statute, then forfeiture is authorized; and that the district court had statutory authority to enter a criminal forfeiture order in this case because of the defendant's conviction of aggravated identity theft with a bank fraud predicate offense.

The panel held that the defendant knowingly and voluntarily waived his right to challenge the forfeiture as a violation of the Eighth Amendment's Excessive Fines Clause, on notice grounds, and on the ground that the district court erred by not requiring the government to prove the amount of proceeds.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jason F. Carr (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Cristen C. Thayer, Research and Writing Attorney; Office of the Federal Public Defender, Las Vegas, Nevada; for Defendant-Appellant.

Elizabeth O. White (argued), Appellate Chief; Daniel G. Bogden, United States Attorney; Daniel D. Hollingsworth, Assistant United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

**OPINION**

GOULD, Circuit Judge:

Dwight Pollard and several codefendants used false identification documents to open fraudulent bank accounts and steal money. Pollard was caught, and pleaded guilty to one count of aggravated identity theft and aiding and abetting, and one count of possessing a false identification document with the intent to defraud the United States. He was sentenced to time served and supervised release. The court also ordered $1,430,396.91 in restitution, and $4,128,554.00 of forfeiture. As part of his plea agreement, Pollard agreed to the specified amount of forfeiture, waived various rights related to forfeiture, and waived his right to appeal.

Pollard challenges the forfeiture order, contending that the district court lacked the statutory authority to impose forfeiture, and that the forfeiture amount violates the Eighth Amendment's Excessive Fines Clause. He also raises issues

relating to notice and the government's failure to prove the amount of forfeiture.

# I

In the Second Superseding Indictment, Pollard—along with his codefendants—was charged with five counts of bank fraud, four counts of aggravated identity theft, and one count of conspiracy, all relating to a scheme to defraud Bank of America. The indictment also included six forfeiture allegations—one for bank fraud and five for conspiracy— seeking forfeiture of up to $4,128,554.00.

The indictment alleged that Pollard and his codefendants used false identifications to assume control over the bank accounts of various Bank of America patrons. The defendants opened up accounts in the patrons' names, and connected those new accounts to patrons' existing accounts so that the defendants could transfer money out of the existing accounts. The defendants then could access the patrons' existing accounts by using fraudulently obtained debit cards to withdraw money.

Pollard pleaded guilty to one felony count of aggravated identity theft and aiding and abetting, and one misdemeanor count of possessing a false identification document with the intent to defraud the United States. An essential element of Pollard's aggravated identity theft plea was an admission that he committed and aided and abetted bank fraud. In the recitation of facts, Pollard also admitted to conspiring with others to commit both bank fraud and aggravated identity theft.

Pollard also agreed to "the criminal forfeiture of an *in personam* criminal forfeiture money judgment in the amount of $4,128,554.00." He waived his right to appeal, and various rights related to the forfeiture.

The district court sentenced Pollard to time served and two years of supervised release, and imposed restitution in the amount of $1,430,396.91, for which Pollard and his codefendants were jointly and severally responsible. The court initially declined to impose forfeiture, concluding that forfeiture "would thwart the purposes of rehabilitation and thwart the factors set forth in 18 USC, Section 3553(a)." The government appealed. While that appeal was pending, we issued our decision in *United States v. Newman*, which held that when the government meets the requirements for the imposition of forfeiture, "the district court must impose criminal forfeiture in the amount of the 'proceeds' of the crime." 659 F.3d 1235, 1239 (9th Cir. 2011). In response to the government's motion, we vacated the district court's judgment in this case and remanded "for the district court to follow the procedures set forth in *Newman*." Order, *United States v. Pollard*, No. 11-10157 (9th Cir. Nov. 20, 2012).

On remand, the district court held that it had statutory authority to enter an order of criminal forfeiture for a conviction of aggravated identity theft, and found that the government had given Pollard notice of the criminal forfeiture. The district court denied Pollard's request for a hearing to determine the amount of proceeds. Noting its authority to rely on factual statements in the plea agreement, the district court reasoned that, because the parties stipulated to the amount of forfeiture, "the government did not have an independent obligation to offer detailed proof of that

stipulated fact." The court found "no reason to question the accuracy of the stipulated amount," and entered an order of criminal forfeiture in the stipulated amount of $4,128,554.00. Pollard timely appealed the order of forfeiture and the amended judgment incorporating that order.

## II

We review a "district court's interpretation of federal forfeiture law *de novo*." *United States v. Casey*, 444 F.3d 1071, 1073 (9th Cir. 2006). Similarly, we review *de novo* the legality of the sentence, *United States v. Flores*, 559 F.3d 1016, 1019 (9th Cir. 2009), and "the validity of an appeal waiver," *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016).

## III

The government's primary argument is that this appeal is barred by Pollard's plea agreement, which included a waiver of the right to appeal and waiver of specific rights related to forfeiture. However, even a valid appellate waiver does not prevent courts from reviewing an illegal sentence, that is, one that "exceeds the permissible statutory penalty for the crime or violates the Constitution." *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007). We consider whether the district court had the statutory authority to impose forfeiture when the crime of conviction was aggravated identity theft, whether the forfeiture amount violated the Eighth Amendment's Excessive Fines Clause, and whether forfeiture was imposed without the Government meeting the statutory notice requirement. We address each claim in turn.

**A**

Title 18 of the United States Code separates civil and criminal forfeiture into two different sections. Section 981 covers civil forfeiture and § 982 covers criminal forfeiture. 18 U.S.C. §§ 981–982. In addition, 28 U.S.C. § 2461(c) provides:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case . . . .

This provision "permits the government to seek *criminal* forfeiture whenever civil forfeiture is available *and* the defendant is found guilty of the offense." *Newman*, 659 F.3d at 1239. It "make[s] criminal forfeiture available in every case that the criminal forfeiture statute does not reach but for which civil forfeiture is legally authorized." *Id.* (quoting *United States v. Padron*, 527 F.3d 1156, 1161–62 (11th Cir. 2008)). If the Government had statutory authority to seek civil forfeiture against Pollard, it had the authority to seek criminal forfeiture.

The civil forfeiture statute provides, "[a]ny property, real or personal, which constitutes or is derived from proceeds *traceable to a violation* of [several specific] section[s] . . . of

this title or any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense," "is subject to forfeiture to the United States."   18 U.S.C. §§ 981(a)(1), (a)(1)(C) (emphasis added).   The civil forfeiture statute does not require that property be traceable to a *conviction*, only that it be traceable to a *violation* of an enumerated provision.

Pollard was convicted of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 1028A(c)(5).[1] Aggravated identity theft is committed when an individual "during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  18 U.S.C. § 1028A(a)(1).  We refer to the felonies "enumerated in subsection (c)" as "predicate offenses." Although a violation of § 1028A, is not itself an enumerated offense in either the civil or criminal forfeiture statutes, *see id.* §§ 981, 982, or an "offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18])," *id.* § 981(a)(1)(C), some of the aggravated identity theft predicate offenses are enumerated in the forfeiture statutes.   We  have  not  previously  addressed  whether

---

[1] Pollard   was   also   convicted   of   violating   18   U.S.C. §§  1028(a)(4)(b)(6)  &  (c)(3)(A), possessing  a  false  identification document with the intent to defraud the United States.  Proceeds obtained from a violation of 18 U.S.C. § 1028 are subject to forfeiture under both the civil and criminal forfeiture statutes. *See* 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B).  However, the government did not argue for, and the district court did not use, this conviction as the basis of its forfeiture order. Because the appealed order is predicated on Pollard's conviction for aggravated identity theft, and the government argues for imposition of forfeiture based on that conviction alone, we address only forfeiture for a violation of 18 U.S.C. § 1028A.

forfeiture is authorized on the basis of an admitted violation of a predicate offense that is also enumerated in the civil forfeiture statute. We now hold that when a conviction for aggravated identity theft is premised on a proven or admitted violation of a predicate offense that is enumerated in the civil forfeiture statute, then forfeiture is authorized.

In his plea agreement, Pollard admitted to committing aggravated identity theft, including commission of the predicate offense of bank fraud, a violation of 18 U.S.C. § 1344. *See* 18 U.S.C. § 1028A(c)(5).**[2]** Bank fraud is an enumerated offense under the civil forfeiture statute. *See* 18 U.S.C. § 981(a)(1)(C). The proceeds of Pollard's crime of conviction are, therefore, traceable to a violation of an enumerated section supporting forfeiture, because they are traceable to his admitted violation of the federal bank fraud statute. That statute was essential to his conviction for aggravated identity theft. Put another way, the aggravated identity theft charge necessarily included a "charge[] . . . [for] a violation of [the bank fraud] Act," and civil forfeiture is authorized for violations of the bank fraud statute. *See* 28 U.S.C. § 2461(c). The proceeds of the crime must be forfeited to the United States. *See* 18 U.S.C. § 981(a)(1)(C); *Newman*, 659 F.3d at 1239–40. The district court had statutory authority to enter a criminal forfeiture order because of Pollard's conviction of aggravated identity theft, with a bank fraud predicate offense.

---

**[2]** During the colloquy at the change of plea hearing, the district court outlined the elements of aggravated identity theft, bank fraud, and aiding and abetting. Pollard pleaded guilty, and agreed with the recitation of facts in the plea agreement.

**B**

Pollard also asserts that the forfeiture order violates the Eighth Amendment's Excessive Fines Clause.

As explained above, a waiver of appellate rights generally does not preclude review of a sentence that violates the Constitution. *See United States v. Torres*, 828 F.3d 1113, 1124–25 (9th Cir. 2016). However, as the Government notes, Pollard waived more than just his general right to appeal. Under the section of the plea memorandum titled, "**Forfeiture**," Pollard not only agreed to "an *in personam* criminal forfeiture money judgment in the amount of $4,128,554.00," but also specifically waived "any claim or defense under the Eighth Amendment to the United States Constitution, including, but not limited to, any claim or defense of excessive fine in any proceedings concerning the property."

A defendant may waive his constitutional rights if clear and convincing evidence shows that the waiver is knowing, voluntary, and intelligent. *Gete v. I.N.S.*, 121 F.3d 1285, 1293 (9th Cir. 1997). We "indulge every reasonable presumption against waiver." *Id.* (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)). To determine whether a defendant has knowingly, voluntarily, and intelligently waived his constitutional rights, "we review the particular circumstances of the case and the nature of the right involved." *Id.*

Pollard does not argue that his entry into the plea agreement overall was not knowing or voluntary, nor does he challenge the sufficiency of the plea colloquy. Rather, he

asserts that his agreement to the plea's forfeiture provisions in particular was without knowledge and voluntariness.

Pollard argues that he lacked knowledge of the forfeiture amount because the plea agreement does not clearly state the amount of forfeiture, and he lacked notice that the Government would seek forfeiture for aggravated identity theft. This contention is contradicted by the plain language of the plea, Pollard's statement that he understood the government would seek forfeiture of $4,128,554.00, and his attorney's statements at the plea hearing reiterating that Pollard agreed to forfeiture in the amount of more than four million dollars. Pollard also relies on a statement the district court made at sentencing regarding his ability to negotiate all aspects of the plea agreement, in an attempt to assert that acceptance of the forfeiture provisions was not voluntary. The district court's statements related to the negotiating positions of the parties, not the voluntariness of Pollard's plea. Pollard does not offer any additional argument as to why his plea was not knowing or voluntary.

The record supports the conclusion that Pollard knowingly, voluntarily, and intelligently agreed to the amount of forfeiture and the accompanying forfeiture provisions, including the waiver of his right to challenge the amount on Eighth Amendment grounds. Although in the colloquy at the change of plea hearing the district court did not specifically address the Eighth Amendment waiver, the court did confirm that Pollard waived his right to appeal, and that he did so freely and voluntarily. The court also confirmed that before Pollard signed the written plea agreement, Pollard read it, understood its terms, discussed it with his lawyer, and that Pollard's lawyer answered any questions Pollard had. The forfeiture provisions were not obscure; instead, they were set

forth in their own section with the bold and underlined heading: "**Forfeiture**."

Both the prosecutor and the district court raised the issue of forfeiture during the change of plea hearing. During the prosecutor's recitation of the substance of the plea agreement, she twice referred to Pollard's agreement to forfeiture. The first reference was at the start of her recitation. The second was made shortly after explaining that Pollard waived his right to appeal. The prosecutor stated, "[t]he defendant agrees to the forfeiture of property up to the amount of $4,128,554 as set forth in Section K of this agreement, paragraphs 19 through 30, Pages 10 and 11." The prosecutor specifically drew the court and Pollard's attention to the provisions of the plea agreement addressing forfeiture, including the waiver of an Eighth Amendment challenge.

After the prosecutor's recitation of the substance of the plea agreement, the district court asked both Pollard and his attorney if they agreed that the terms of the plea agreement were correctly stated and if they conformed to Pollard's understanding of the agreement. Both answered in the affirmative. In addition, the court confirmed with Pollard that he understood the government would be seeking forfeiture of $4,128,554.00. Pollard confirmed that was his understanding. At sentencing, Pollard's attorney stated, "we have a plea agreement in this case and Mr. Pollard did agree to the forfeiture amount of $4 million and some so we're bound by the terms of the plea agreement."

Pollard knowingly and voluntarily accepted the plea agreement, agreed to waive his right to appeal, knew that the government was seeking a specific amount of forfeiture, agreed to that specific amount of forfeiture, and waived his

right to challenge the forfeiture amount on Eighth Amendment grounds. There is clear and convincing evidence in the record that shows Pollard's waiver of his right to challenge the forfeiture amount on Eighth Amendment grounds was knowing, intelligent, and voluntary. *See Gete*, 121 F.3d at 1293.[3] We conclude that Pollard waived this Eighth Amendment claim and decline to address it.[4]

## C

Pollard also challenges the legality of the forfeiture order on the grounds that the Government did not file a forfeiture allegation related to the count of conviction. Federal Rule of Criminal Procedure 32.2(a) sets forth the notice requirements for forfeiture, and "provides that a court may not enter an order of forfeiture unless the indictment or information contains notice that the government will seek forfeiture." *United States v. Lo*, 839 F.3d 777, 790 (9th Cir. 2016) (evaluating the adequacy of a forfeiture notice despite there being an appellate waiver). As noted above, a general appellate waiver does not prevent the court from analyzing a claim of an illegal sentence. *See id.* at 790; *Bibler*, 495 F.3d at 624.

---

[3] We need not address whether a knowing and voluntary waiver of a specific constitutional challenge would remain binding if there were significant changes in the case law concerning the viability of such a challenge. Pollard relies on no such legal developments here.

[4] We also do not address whether the government may recover the full agreed upon forfeited amount from both Pollard and his codefendants. *See Newman*, 659 F.3d at 1244 n.8 (noting that "[t]he government asserts that it may not, and will not, seek forfeiture from co-conspirators that exceeds the total amount of 'proceeds,'" but declining to address the issue).

Like the Eighth Amendment claim, Pollard waived his right to appeal the forfeiture order on notice grounds. *See United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) (concluding a defendant may waive constitutional and statutory rights as part of a plea bargain). In the plea agreement, Pollard specifically "agree[d] to waive . . . Fed. R. Crim. P. . . . 32.2(a)." For the reasons stated above, we conclude that this waiver was valid, and decline further to address this claim.

## IV

Pollard challenges the forfeiture amount on one final ground. He argues that the district court erred by not requiring the government to prove the amount of proceeds. Unlike the claims discussed above, this argument does not go toward the statutory or constitutional legality of the sentence. The Government asserts that Pollard waived this particular argument when he waived his general appellate rights. We agree that Pollard waived this claim, but hold that he did so when he waived his other claims and rights related specifically to forfeiture, rather than through the general appellate waiver. That specific forfeiture waiver provided that Pollard waived "all constitutional, legal, and equitable defenses . . . in any proceedings concerning the property." A claim that the district court erred by not requiring the government to prove the amount of proceeds when it imposed forfeiture in the amount to which Pollard agreed falls squarely within this waiver. For the reasons set forth above, we hold that Pollard knowingly and voluntarily waived this claim, and we decline to consider it.

**AFFIRMED.**