NOT FOR PUBLICATION

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10335 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00355-GMN-CWH-1 |
| v. | |
| GREGORY VILLEGAS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted January 22, 2024
Pasadena, California

Before: GOULD and BERZON, Circuit Judges, and BLOCK,[**] District Judge.

Gregory Villegas appeals his $5,261,218 forfeiture judgment imposed after he pled guilty to conspiracy to commit wire fraud. We previously vacated and remanded a forfeiture judgment imposed on Villegas for $5,261,218 with instructions for the district court to assess the forfeiture judgment in light of the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

Supreme Court's decision in *Honeycutt v. United States*, 581 U.S. 443 (2017). *United States v. Villegas*, 747 F. App'x 600 (9th Cir. 2019). Upon remand, the district court again entered a forfeiture judgment for $5,261,218. Although the district court had already entered forfeiture orders against two of Villegas's co-conspirators in the amount of $2,300,508.86, the court held that Villegas obtained the sum of all the proven proceeds in the conspiracy, totaling $5,261,218.[1] The district court found that Villegas, as the leader of the conspiracy, exercised control over his co-conspirators, who each held a different portion of the proceeds in bank accounts registered under their names. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the forfeiture judgment.

We review *de novo* a district court's interpretation of federal forfeiture laws. *United States v. Pollard*, 850 F.3d 1038, 1041 (9th Cir. 2017). Under forfeiture statutes like those involved in this case,[2] a defendant cannot "be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." *Honeycutt*, 581 U.S. at 445. "*Honeycutt* does

---

[1] Christine Gagnon and Mickey Gines, two of Villegas' many co-conspirators, were each ordered to forfeit $1,684,462 and $616,046.86, respectively. These amounts reflected the proceeds held in the bank accounts for which Gagnon and Gines were the authorized users.

[2] *United States v. Thompson*, 990 F.3d 680, 689 (9th Cir. 2021) ("*Honeycutt* does apply to 18 U.S.C. § 981(a)(1)(C)."); *United States v. Prasad*, 18 F.4th 313, 320–21 (9th Cir. 2021) (applying *Honeycutt* to 18 U.S.C. § 982(a)).

2

not allow for an interpretation that any conspirator who at some point had physical control is subject to forfeiture of all the proceeds." *United States v. Thompson*, 990 F.3d 680, 691 (9th Cir. 2021). Rather, a defendant is only subject to forfeit the amount that "came to rest with him as a result of his crimes." *Id.* The Government has the burden to prove a nexus between the property and the crime by a preponderance of the evidence. *United States v. Mancuso*, 718 F.3d 780, 798–99 (9th Cir. 2013).

We conclude that the forfeiture judgment violates *Honeycutt* as interpreted in *Thompson*. In cases involving co-conspirators, the district court must usually make "findings establishing how the loot was divided among the conspirators." *Thompson*, 990 F.3d at 691. Here, however, the district court could not make such a finding because the Government only provided evidence regarding the amount of proceeds that were initially deposited into the co-conspirators' bank accounts. The record suggests that Villegas had his co-conspirators withdraw the proceeds and bring the proceeds to him, after which he divided the proceeds among his co-conspirators. The Government did not present evidence proving the amounts that each co-conspirator ultimately received. For the forfeiture orders entered against Villegas' co-conspirators, the Government agreed to use the amounts of money processed through each co-conspirator's bank account as a proxy for the amounts that actually "came to rest" with each co-conspirator.

In contrast, Villegas was ordered to forfeit $5,261,218, the sum of the proceeds held in all of the co-conspirators' bank accounts. $5,261,218 is neither the amount that "came to rest" with Villegas as that phrase was used in *Thompson* (*i.e.*, "the money [that] came to rest after the swindlers split it up") nor the amount that was held in Villegas' bank accounts (*i.e.*, the amount consistent with the proxy the Government used for the actual amounts that "came to rest" with Villegas' co-conspirators). *Id.* Villegas' forfeiture judgment violates *Honeycutt* because he will be required to satisfy the order from untainted assets if his co-conspirators do not first satisfy their forfeiture judgments. *See Honeycutt*, 581 U.S. at 449.

We reverse and remand to the district court to enter a forfeiture judgment for $156,962, which is the amount of proceeds that the Government proved was held in Villegas' bank accounts. We do not remand to the district court to determine afresh the amount of money that "came to rest" with each conspirator. In *Thompson*, such a remand was appropriate because the district court could determine on the existing record the amount of proceeds that came to rest with each of the defendants. *See Thompson*, 990 F.3d at 685. Here, the amount to be forfeited by the two other convicted conspirators has already been finally determined. And, the Government, with regard to the funds that "came to rest" with Villegas, presented evidence only of the amount of money in his bank accounts. There is no other evidence of the amount ultimately distributed to Villegas. Having had an opportunity to present

4

other evidence of the tainted money Villegas personally received—quite possibly much more than the amount in the accounts the Government identified—the Government did not do so. Because the only evidence in the record that could be used to approximate the amount that "came to rest" with Villegas is the $156,962 in his bank accounts, no further findings on that issue could cure that failure of proof.

**REVERSED and REMANDED.**