**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MICHAEL DAVID CASEY,
            *Defendant-Appellant.*

No. 04-30525

D.C. No.
CR-03-00049-AJB

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

MICHAEL DAVID CASEY,
            *Defendant-Appellee.*

No. 05-30016

D.C. No.
CR-03-00049-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
December 7, 2005—Portland, Oregon

Filed April 10, 2006

Before: James R. Browning, Dorothy W. Nelson, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Nancy Bergeson, Assistant Federal Public Defender, Portland, Oregon, argued the cause for the petitioner and was on the briefs.

Jennifer J. Martin, Assistant United States Attorney, Portland, Oregon, argued the cause for the respondent; Karin J. Immergut, United States Attorney, Portland, Oregon, was on the briefs.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the United States is entitled to a money judgment forfeiture order against a criminal defendant who was convicted of a drug crime but had no assets at the time of sentencing.

I

In late 2001, two men agreed to purchase 1,000 tablets of 3,4-methylenedioxymethamphetamine (MDMA), a controlled

substance commonly referred to as "ecstasy," from Michael Casey. 21 C.F.R. § 1308.11(d)(11) (2005). The buyers wired $7,000 directly into Casey's bank account, and he in turn sent the illicit drugs across state lines from California to Oregon in two separate shipments—the first on January 4, 2002, and the second on January 8, 2002.

Authorities arrested the buyers shortly after they received the second shipment, and they agreed to cooperate with federal prosecutors and to testify against Casey. Following an investigation, Casey was indicted on two counts of distribution of ecstasy, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C), and a forfeiture count covering the $7,000 proceeds of the drug transaction.

At his April 7, 2004, hearing, Casey pleaded guilty to the distribution counts. Before he could be sentenced, however, the Supreme Court handed down its decision in *Blakely v. Washington*, 542 U.S. 296 (2004). Following *Blakely*, Casey argued that he could not be sentenced based on 1,000 tablets of ecstasy because he had not explicitly admitted drug quantity at his plea hearing. After the United States Probation Office filed its presentence report which agreed with Casey's interpretation, the government requested that the district court empanel a sentencing jury while preserving its contention that Casey's statements at his plea hearing qualified as admissions under *Blakely*.

The district court rejected the government's request for a sentencing jury but, at the sentencing hearing, found that Casey had accepted responsibility for a specific quantity of ecstasy during his plea colloquy and thereupon sentenced him to two 70-month terms as provided by the Sentencing Guidelines, to be served concurrently. The court declined to impose a forfeiture money judgment, explaining that it was not within her authority because Casey had no assets to forfeit.

Casey filed this timely appeal challenging his 70-month concurrent sentences. The government filed a timely cross

appeal of the district court's refusal to impose a forfeiture money judgment.

At oral argument, the government conceded that Casey is entitled to a full remand for resentencing under *United States v. Dare*, 425 F.3d 634 (9th Cir. 2005).[1]

## II

**[1]** The only remaining issue is whether the district court erred by refusing to impose a money judgment for forfeiture of the proceeds of the ecstasy sale. A person convicted of a violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, punishable by more than one year imprisonment is subject to the forfeiture provisions of 21 U.S.C. § 853. Section 853 provides that the district court "shall order" forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." § 853(a). If the actual proceeds are unavailable, "the court shall order the forfeiture of any other property of the defendant." § 853(p).

Casey claims that he was only a middleman in the transaction; he transferred the money he received to a third party who actually shipped the drugs. Even though he no longer has the drug proceeds, § 853(p) clearly requires that Casey forfeit substitute assets in their stead, but his only asset appears to be a stock account worth approximately $150. The government argues that the court should have imposed a money judgment that could be satisfied out of any future assets Casey acquires. Casey counters that the statute does not authorize money judgments but is limited only to forfeiture orders of existing assets. We review the district court's interpretation of federal

---

[1]Casey also argues that resentencing him under the post-*Booker* advisory sentencing guidelines would violate his due process rights and the Ex Post Facto Clause. We reject such claim based on our decision in *United States v. Dupas*, 419 F.3d 916, 919-21 (9th Cir. 2005).

forfeiture law *de novo. United States v. Kim*, 94 F.3d 1247, 1249 (9th Cir. 1996).

A

**[2]** "Property subject to criminal forfeiture under [§ 853] includes — (1) real property . . . and (2) tangible and intangible personal property, including rights, privileges, interests, claims and securities." § 853(b). The definition of property is not limited to the defendant's current assets, but neither does it explicitly authorize money judgments, which could be satisfied out of the defendant's future assets.

1

**[3]** It is significant that "[t]he provisions of [§ 853] shall be liberally construed to effectuate its remedial purposes." § 853(o). "The text of the relevant statutory provisions makes clear that Congress conceived of forfeiture as punishment for the commission of various drug . . . crimes." *Libretti v. United States*, 516 U.S. 29, 39 (1995); *see also United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (characterizing forfeiture as "part of the penalty for the defendant's conviction"); *United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996) ("[a] criminal forfeiture is an *in personam* judgment *against a person convicted of a crime.*" (citation and internal quotation marks omitted)). "We must respect this congressional purpose if the statutory language will support such a construction." *United States v. Littlefield*, 821 F.2d 1365, 1367 (9th Cir. 1987).

**[4]** It is also clear that Congress intended criminal forfeiture provisions to eliminate profit from certain criminal activities, including money laundering, racketeering and drug trafficking. *See United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir. 1985) (en banc) (interpreting the Racketeer Influenced and Corrupt Organizations (RICO) statute's forfeiture provision, which is similar to § 853). In an oft-quoted pas-

sage, the Seventh Circuit, rejecting a defendant's argument that spent profits could not be forfeited, emphasized that

> a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from . . . crime to the same extent as if he had put the money in his bank account. Every dollar that the racketeer derives from illicit activities and then spends on such items as food, entertainment, college tuition, and charity, is a dollar that should not have been available for him to spend for those purposes.

*Id.* The court held that the statute required forfeiture of the total proceeds, regardless of whether those funds were still in his possession.[2] *Id.* at 803.

Although *Ginsburg* predates Congress's addition of § 853(p) specifically authorizing forfeiture of substitute assets, its reasoning is no less compelling. In the present case, Casey received funds that should never have been available for him to spend. Imposing a money judgment despite his lack of assets at sentencing negates any benefit he may have received from the money, ensuring that, in the end, he does not profit from his criminal activity.

**[5]** Requiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent. Casey's argument frustrates the broad remedial purpose of the statute.

---

[2]In a case involving § 853, the Fourth Circuit called this reasoning "persuasive" and held that the government did not have to prove that assets subject to forfeit were still in existence at the time of conviction. *United States v. Amend*, 791 F.2d 1120, 1127 & n.6 (4th Cir. 1986). No other Circuit has reached a contrary conclusion.

2

The two sister-Circuit decisions which have considered the issue hold that a money judgment is warranted in a criminal forfeiture case even against a defendant who has no assets with which to satisfy it.

The First Circuit decided that "the government is entitled to an *in personam* judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense." *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999). In its view,

> A money judgment permits the government to col-lect on the forfeiture order in the same way that a successful plaintiff collects a money judgment from a civil defendant. Thus, even if a defendant does not have sufficient funds to cover the forfeiture at the time of the conviction, *the government may seize future assets to satisfy the order*.

*United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006) (empha-sis added). *Hall* upheld entry of the money judgment, basing its decision on the punitive nature of forfeiture. *Id.* The court reasoned that "permitting a money judgment, as part of a for-feiture order, prevents a drug dealer from ridding himself of his ill-gotten gains to avoid the forfeiture sanction." *Id.*

The Seventh Circuit has also addressed the propriety of an *in personam* money judgment where the defendant has insuf-ficient assets to satisfy it. *United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000). The defendant in *Baker* had some assets that, once recovered by the government, would be "far short of the forfeiture award." *Id.* Although the defendant did not object to the money judgment, the court declared it "prop-er," explaining that "[i]n effect this places a judgment lien

against [the defendant] for the balance of his prison term and beyond." *Id.*³

B

Casey disagrees, arguing that the First and Seventh Circuits reached the wrong conclusion, and he insists that our approach to criminal forfeitures requires a different result.

1

Casey first notes that we have routinely categorized criminal forfeitures as *in personam* judgments. *See Nava*, 404 F.3d at 1124 ("[C]riminal forfeiture provisions operate *in personam* against the assets of the defendant"); *Lester*, 85 F.3d at 1413; *United States v. $814,254.76 in United States Currency*, 51 F.3d 207, 210-11 (9th Cir. 1995). He then argues that *in personam* judgments and money judgments are distinct legal concepts; because there must be some logical distinction between the two, Casey contends that an *in personam* judgment cannot also be a money judgment.

---

³Other circuits have suggested the same answer without reaching the precise issue. The Eleventh Circuit approved a forfeiture under the RICO statute of over three million dollars, stating that "[u]nder the circumstances presented here, the [district] court could enter what amounted to a personal money judgment against the . . . defendant." *United States v. Navarro-Ordas*, 770 F.2d 959, 969 (11th Cir. 1985). The court reasoned in part that "a court must order forfeiture of the amount of the profits and place the burden of satisfying the order on the convicted defendant, regardless of what he may actually have done with his profits." *Id.* at 970. Similarly, the Third Circuit has stated that "[b]ecause criminal forfeitures are *in personam* . . . the substitute assets provision also gives the government the ability to receive, in essence, a general judgment against the defendant." *United States v. Voigt*, 89 F.3d 1050, 1086 n.21 (3d Cir. 1996) (citation and internal quotation marks omitted). The Eighth Circuit has stated that "[f]orfeiture . . . allows the government to obtain a money judgment representing the value of all property involved in the offense." *United States v. Huber*, 404 F.3d 1047, 1056 (8th Cir. 2005) (citation and internal quotation marks omitted).

Casey cites to *Black's Law Dictionary* 861 (8th ed. 1999) for the proposition that a money judgment is "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief." By comparison, an *in personam*, or personal, judgment is defined there as one "that imposes personal liability on a defendant and that may therefore be satisfied out of any of the defendant's property within judicial reach" and as "[a] judgment against a person as distinguished from a judgment against a thing, right, or status." *Id.* Because we have termed forfeiture judgments as *in personam*, Casey argues that "a criminal forfeiture cannot also be a kind of money judgment," citing the maxim *designatio unius est exclusio alterius*.

These definitions, however, undercut Casey's argument. The opposite of a money judgment is equitable or injunctive relief, not an *in personam* judgment. Certainly an 'injunctive money judgment' would be nonsensical. Similarly, *in personam* judgments are distinguished not from money judgments but from *in rem* judgments—those against specific property instead of an individual.

**[6]** Tellingly, in at least one instance, we have specifically referred to an "*in personam* money judgment." *Posner v. Tabone* (*In re Posner*), 700 F.2d 1243, 1245 (9th Cir. 1983) (per curiam). The combined usage apparently designates a judgment for damages, subject to immediate execution, entered against an individual. *See $814,254.76 in United States Currency*, 51 F.3d at 210-11 (contrasting criminal forfeiture's *in personam* judgments with civil forfeiture's judgments against particular property). We are satisfied that most judgments, at least in the civil context, are *in personam* money judgments. There is no persuasive reason for creating an artificial distinction between the two terms in the criminal forfeiture context.

**[7]** Federal Rule of Criminal Procedure 32.2 supports this position and differentiates between instances in which the

government "seeks forfeiture of specific property" or "a personal money judgment." Fed. R. Crim. P. 32.2(b)(1). The Advisory Committee Notes clarify that "[s]ubdivision (b)(1) recognizes that there are different kinds of forfeiture judgments in criminal cases. One type is a personal judgment for a sum of money; another is a judgment forfeiting a specific asset." Fed. R. Crim. P. 32.2(b) advisory committee's notes. Although the notes take no position on the propriety of criminal forfeiture money judgments, they do suggest that Casey's suggested distinction between *in personam*, or personal, judgments and money judgments is unsupportable.

2

Casey next contends that imposing a money judgment would eliminate the difference between forfeitures and fines, relying heavily on a solitary district court decision, *United States v. Croce*, 334 F. Supp. 2d 781, 794 (E.D. Pa. 2004). *Croce* rejected the government's request for a money judgment in a money laundering forfeiture case, reasoning that the government's position would eliminate any distinction between fines and forfeitures. *Id.* Further, the district court refused to "permit the specter of a nonspecific and unlimited forfeiture money judgment to haunt the defendants for the rest of their lives," explaining that "[t]he Government is entitled to forfeiture of their very last penny, but not a penny more." *Id.* at 795.

We are unpersuaded by the *Croce* court's reasoning. As we have already emphasized, we are bound to give § 853 a liberal construction that furthers the section's remedial purposes. 21 U.S.C. § 853(o). We are satisfied that money judgments will advance the purposes of the forfeiture statute in combating the illegal drug trade and punishing those involved in it.

[8] We disagree that allowing money judgments in forfeiture cases erases the distinctions between fines and forfeitures. A district court continues to have discretion in imposing

fines, considering such factors as the financial resources of the defendant and the burden a fine would represent. 18 U.S.C. § 3572(a). Contrary to *Croce*, imposition of a money judgment in the forfeiture context is neither "nonspecific" or "unlimited." The statute mandates that a defendant forfeit a very specific amount—the proceeds of his criminal activity. In the present case, Casey must forfeit the $7,000 he received in the illegal drug transaction.[4]

**[9]** Nor is a money judgment in a forfeiture case open-ended. Once the defendant pays over the specific amount of the proceeds received, the judgment is satisfied. The district court in *Croce* deemed a money judgment "unlimited" because the magnitude of a forfeiture money judgment "bears no relation to the assets that a convict possesses at any particular time." *Croce*, 334 F. Supp. 2d at 783. But this is simply a characteristic of forfeiture. Criminal forfeiture under § 853, by definition, bears a direct relation to the proceeds of the crime. Mandatory forfeiture is concerned not with how much an individual has but with how much he received in connection with the commission of the crime.

## C

**[10]** We conclude, following the First and Seventh Circuits, that money judgments are appropriate under § 853, even in

---

[4]While Casey concedes that the amount of the transaction was $7,000, he objects to a forfeiture award of any more than $200, as he claims to have passed on $6,800 to the person who actually shipped the ecstasy tablets. Section 853 does not speak in terms of "profits" or "net proceeds," however; it requires the forfeiture of "any proceeds." § 853(a). Particularly in light of our obligation under § 853(o) to construe the statute liberally, we find no reason to give "proceeds" a definition narrower than its usual one: "the amount of money received from a sale." *Black's Law Dictionary* 1242 (8th ed. 1999). Furthermore, Congress expressly exempted intermediaries in some money laundering crimes from the forfeiture of substitute property. *See* 18 U.S.C. § 982(b)(2). The lack of any such exemption for intermediaries in the drug trafficking context lends further support to our reading of "proceeds" as applied to Casey's transactions.

cases of insolvent defendants. The criminal forfeiture statute mandates imposition of a money judgment on substitute property, and following Congress's command, we construe the provisions of the forfeiture statute liberally to further its purposes. 21 U.S.C. § 853(o). Because we hold that the government is entitled to a money judgment in criminal forfeiture cases, even when a defendant has no assets, the district court erred by refusing to enter the requested money judgment against Casey.

## III

**[11]** We therefore vacate Casey's sentence and remand for full resentencing. Further, we reverse the denial of imposition of a money judgment for $7,000 and remand for further proceedings consistent with this opinion.

**SENTENCE VACATED AND REMANDED IN PART, and REVERSED AND REMANDED IN PART**.