**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ABHIJIT PRASAD,<br>*Defendant-Appellant*. | No. 19-10454<br><br>D.C. No.<br>3:18-cr-00368-<br>CRB-1<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted February 9, 2021
San Francisco, California

Filed November 8, 2021

Before: Marsha S. Berzon, Morgan Christen, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Bade;
Concurrence by Judge Christen

# SUMMARY[*]

## Criminal

The panel affirmed the district court's forfeiture order under 18 U.S.C. § 982(a)(6)(A)(ii) in the amount of $1,193,440.87, in a case in which a jury convicted Abhijit Prasad of twenty-one counts of visa fraud, in violation of 18 U.S.C. § 1546(a), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

Prasad owned and operated Maremarks, a company through which Prasad filed petitions seeking H-1B status for nonimmigrant, foreign workers in specialty occupations to come to the United States as Maremarks' employees performing work for Maremarks' end-clients. Engaging in a scheme that created a "bench" of unemployed H-1B beneficiaries, Prasad violated § 1546(a) by falsely representing in the H-1B petitions that there were specific, bona fide positions available for the H-1B beneficiaries when those positions did not exist.

Challenging the district court's interpretation of 18 U.S.C. § 982(a)(6)(A)(ii)(I)(7), Prasad argued that the district court erred in calculating the amount he was required to forfeit for his commission of visa fraud.

Prasad contended that he did not "obtain" the entire $1,193,440.87, as that term is used in § 982(a)(6)(A)(ii)(I), because he eventually paid portions of the money to the H-1B beneficiaries. The panel rejected this contention because

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Prasad possessed the full $1,193,440.87 paid by the end-clients and had control over the money before he paid a percentage of it to employees.

Prasad argued that even if he "obtained" the $1,193,440.87, the "proceeds" are limited to his profit, which excludes the amount he paid to the H-1B beneficiaries for their work for end-clients. The panel rejected this argument. Because the term "proceeds" in § 982(a)(6)(A)(ii)(I)(7) is ambiguous, the panel looked to other sources to determine its meaning. Considering the term "proceeds" in the context of the forfeiture statute, the statute's punitive purpose, and this court's prior construction of virtually identical criminal forfeiture provisions, the panel concluded that the term "proceeds" extends to receipts and is not limited to profit.

Prasad argued that the amounts he paid to the H-1B beneficiaries were "legitimate" and not "derived from unlawful activity," even if the visa applications he submitted were fraudulent. Prasad appeared to argue that because the H-1B beneficiary employees performed legitimate work for end-clients, the portions of the money that Maremarks received for that work and subsequently paid to the beneficiary employees should not be considered proceeds derived from his criminal conduct. The panel rejected this argument because it does not adequately explain how these portions are not proceeds obtained "directly or indirectly" from his visa fraud, as provided in § 982(a)(6)(A)(ii)(I). The panel wrote that the money the end-clients paid for the work beneficiaries performed was "obtained directly or indirectly from" Prasad's unlawful conduct, and concluded that the full $1,193,440.87 therefore constitutes "proceeds obtained . . . from the commission of" visa fraud.

Judge Christen concurred in the judgment.  In her view, this case is the wrong vehicle for parsing the ambiguity of "proceeds" in 18 U.S.C. § 982(a)(6)(A)(ii)(I). She would affirm solely based on § 982(a)(6)(A)(ii)(II), under which Prasad's particular scheme easily warranted forfeiture of his gross receipts as "property used to facilitate ... the commission" of his crimes.

The panel resolved remaining issues and affirmed Prasad's convictions in a concurrently filed memorandum disposition.

## COUNSEL

Juliana Drous (argued), San Francisco, California, for Defendant-Appellant.

Audrey B. Hemesath (argued), Special Assistant United States Attorney; Michael A. Rodriguez, Assistant United States Attorney; Merry Jean Chan, Chief, Appellate Section, Criminal Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

**OPINION**

BADE, Circuit Judge:

Defendant-Appellant Abhijit Prasad was convicted following a jury trial on twenty-one counts of visa fraud, in violation of 18 U.S.C. § 1546(a), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). The district court sentenced Prasad to a total of thirty-six months' imprisonment on all counts and three years' supervised release. The district court also entered a forfeiture order, under 18 U.S.C. § 982(a)(6)(A)(ii), in the amount of $1,193,440.87. Prasad argues that the district court erred in calculating the amount he was required to forfeit for his commission of visa fraud. He asks us to vacate the forfeiture order and remand to the district court to redetermine the forfeiture amount. We conclude that the district court did not err in determining the amount subject to forfeiture and affirm.[1]

## I.

### A.

Prasad owned and operated Maremarks, which he describes as a "visa services company" and the government describes as a "workforce supply company" or "supplier." Through Maremarks, Prasad filed petitions seeking H-1B status for nonimmigrant, foreign workers in specialty occupations—here software engineers—to come to the

---

[1] Prasad also appeals his convictions, asserting evidentiary errors and challenging the sufficiency of the evidence. This opinion addresses only Prasad's arguments challenging the forfeiture order. A concurrently filed memorandum disposition resolves the remaining issues on appeal and affirms Prasad's convictions.

United States as Maremarks' employees performing work for Maremarks' end-clients.[2]

In these petitions, Prasad was required to establish that the H-1B beneficiary employees would fill specific, bona fide positions that were available at the time he filed the petitions, and that there was, or would be, a legitimate employer-employee relationship between Maremarks and the H-1B beneficiaries.  *See* 8 C.F.R. § 214.2(h)(1)(i), (h)(4)(i)(A)(1); *id.* § 214.2(h)(4)(ii) (defining "employer"); *United States v. Nanda*, 867 F.3d 522, 525–26 (5th Cir.

---

[2] The Immigration and Nationality Act allows employers in the United States, like Maremarks, to request H-1B status for nonimmigrant foreign workers in specialty occupations.  *See* 8 U.S.C. § 1184(c); 8 U.S.C. § 1101(a)(15)(H)(i)(b);    8 C.F.R. § 214.2(h)(2)(i).       The prospective employer must first file a Labor Condition Application (LCA) with the Department of Labor (DOL) that identifies the specialty occupation it seeks to fill and attests to certain employment terms and conditions. 8 U.S.C. § 1182(n)(1); *see also* 8 C.F.R. § 214.2(h)(4)(i)(B); 20 C.F.R. §§ 655.700(b), 655.730(c)–(d).   If the Secretary of Labor certifies the LCA, the employer must then submit a Petition for a Nonimmigrant Worker (Form I-129) that requests H-1B nonimmigrant worker classification for the foreign worker.  8 C.F.R. § 214.2(h)(1)(i), (h)(2)(i);  20  C.F.R.  § 655.700(b)(2).    The employer files these documents with the Department of Homeland Security, and the United States Citizenship and Immigration Services (USCIS) processes them. *See* 8 C.F.R. § 214.2(h)(1)–(2); 20 C.F.R. § 655.700(a), (b)(3). If USCIS approves the employer's H-1B petition, the beneficiary employees are admissible as temporary nonimmigrant workers and can obtain an H-1B nonimmigrant visa.    8  C.F.R.  § 214.2(h)(1)–(2);  *see*  20  C.F.R. § 655.700(b)(3). H-1B beneficiaries are authorized to work in the United States only for the petitioning employer for the employment term specified in the petition.  8 C.F.R. § 214.2(h)(1)(i), (h)(2)(i)(D)–(E).  For an H-1B beneficiary to work for an employer other than the petitioner-employer, the prospective new employer must go through the same application process as the original petitioner-employer, "and the alien is not authorized to begin the employment with the new petitioner until the petition is approved."  8 C.F.R. § 214.2(h)(2)(i)(D).

2017).    At the time Prasad operated Maremarks, the employer had to maintain the "right to control" the H-1B beneficiary's employment through the employment term specified in the petition.  Donald Neufeld, U.S. Citizenship & Immigr. Servs., HQ 70/6.2.8 (AD 10-24), *Determining Employer-Employee Relationship for Adjudication of H-1B Petitions, Including Third-Party Site Placements* 4 (2010) (*2010 USCIS Memo*).[3]

When Prasad filed the petitions, he represented to USCIS that there were existing positions available to the prospective H-1B beneficiary employees at Cisco Systems and Ingenuus Software.  In fact, there were no positions available for these workers at Cisco or Ingenuus.  Instead, after the petitions were approved, Maremarks assigned the H-1B beneficiary employees to work for other end-clients.  The end-clients paid Maremarks as the employer of the H-1B beneficiaries, and Prasad paid the H-1B beneficiaries after taking a percentage for himself.

As the government acknowledges, "supplier companies can file visa petitions with [USCIS] for qualified beneficiaries who seek to come to the United States on nonimmigrant work visas."  But Prasad violated the law by falsely representing in the H-1B petitions that there were specific, bona fide positions available for the H-1B beneficiaries when those positions did not exist.  Thus, Prasad engaged in a "bench and switch" scheme.  This scheme involves filing a petition for H-1B status to recruit a foreign worker, despite lacking a specific position for that

---

[3] This guidance was effective during the period that Prasad filed the petitions at issue in this case.  *See* U.S. Citizenship & Immigr. Servs., U.S. Dep't of Homeland Sec., PM-602-0114, *Rescission of Policy Memoranda* 1 (2020).

worker at the time the petition is filed, so that the employer can create a "bench" of unemployed H-1B beneficiaries. *Nanda*, 867 F.3d at 526; *2010 USCIS Memo*, *supra*, at 10. This "bench" allows the employer to contract with end-clients to fulfill their immediate labor needs without the uncertainty and potential delay inherent in filing legitimate petitions seeking H-1B status.[4]  Carrying out this scheme required Prasad to make false representations to USCIS, which led to his conviction on twenty-one counts of visa fraud in violation of 18 U.S.C. § 1546(a).

**B.**

Based on Prasad's visa fraud convictions, the government sought criminal forfeiture, under 18 U.S.C. § 982(a)(6)(A)(ii)(I), in the form of a personal money judgment against Prasad for $1,193,440.87.  The government argued that $1,193,440.87 "represent[s] the amount of proceeds Prasad obtained as a result of the criminal conduct for which he was convicted."  Prasad opposed the government's motion but did not dispute that Maremarks received $1,193,440.87 from the end-clients for the work the H-1B beneficiaries performed.  Instead, Prasad argued that the most the court could order him to forfeit was $238,688.17, which was the estimated amount he kept after paying the beneficiary employees for the work they

---

[4] The number of H-1B petitions that USCIS can grant each year is capped by statute, *see* 8 U.S.C. § 1184(g)(1)(A)(vii), (g)(5), and USCIS reviews the petitions it receives based on a random selection process if there are sufficient petitions to meet the cap.   8 C.F.R. § 214.2(h)(8)(iii)(A)(5)(ii); *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 384 (7th Cir. 2015).  USCIS denies the petitions that are not selected in this process without review.  *Rubman*, 800 F.3d at 384.

performed for the end-clients.[5]  The district court disagreed and ordered forfeiture in the full amount the government requested.  Prasad filed a timely notice of appeal, *see* Fed. R. App. P. 4(b)(1), and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo the district court's interpretation of federal forfeiture statutes.  *United States v. Casey*, 444 F.3d 1071, 1073 (9th Cir. 2006).

## III.

Prasad argues that the district court erred by ordering him to forfeit the entire $1,193,440.87 that Maremarks received from the end-clients in payment for the H-1B beneficiaries' work.  Prasad does not assert any error in the district court's factual findings; rather, he contends that the portion of the $1,193,440.87 that he paid the H-1B beneficiaries for their work for the end-clients is not subject to forfeiture because it is not "property . . . that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense."[6]

---

[5]  Prasad estimates that the H-1B beneficiaries received approximately eighty percent of the $1,193,440.87.

[6] When a defendant is convicted of visa fraud, § 982(a)(6)(A)(ii) mandates that a district court

> shall order that the person forfeit to the United States . . . any property real or personal—
>
> > (I) that constitutes, or is derived from or is traceable to the proceeds obtained directly or

18 U.S.C. § 982(a)(6)(A)(ii)(I).  Thus, Prasad challenges the district court's interpretation of § 982(a)(6)(A)(ii)(I).[7]

To support his assertion that the district court erred in its interpretation of § 982(a)(6)(A)(ii)(I), Prasad argues that:

> indirectly from the commission of the offense of which the person is convicted; or
>
> (II) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted.

18 U.S.C. § 982(a)(6)(A)(ii).

[7] As noted in the concurrence, another subsection of § 982(a)(6)(A)(ii) also requires forfeiture of property "that is used to facilitate, or is intended to be used to facilitate, the commission of the offense," 18 U.S.C. § 982(a)(6)(A)(ii)(II) (the "facilitation" provision). We do not address whether the district court's order can stand under that provision, however, as the parties did not brief that issue before us or the district court.  The government sought forfeiture under subsection (I) (the "proceeds" provision) by tracking the language of subsection (I) and requesting "a forfeiture money judgment of $1,193,440.87, representing the amount of proceeds Prasad obtained as a result of the criminal conduct for which he was convicted."  And although the district court cited subsections (I) and (II) in its order, it did not discuss or apply the facilitation provision, and instead ordered forfeiture for "the amount of illegal proceeds obtained directly or indirectly from the commission of the offense of conviction," language nearly identical to the proceeds provision.  "In our adversarial system of adjudication, we follow the principle of party presentation," and thus, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (citation omitted).  Accordingly, because the parties have developed neither arguments as to whether a facilitation theory could support the forfeiture order under § 982(a)(6)(A)(ii)(II), nor an evidentiary record on the point, we do not consider it.  *See id.*; *A-1 Ambulance Serv., Inc. v. County of Monterey*, 90 F.3d 333, 338–39 (9th Cir. 1996).

(1) he did not "obtain" the amounts he paid the H-1B beneficiaries; (2) those amounts do not constitute "proceeds" because the term "proceeds" is limited to his profits and thus does not extend to the receipts from his criminal activity; and (3) the amounts he paid the H-1B beneficiaries were not "derived from" his commission of visa fraud because they resulted from the H-1B beneficiaries' legitimate work for the end-clients. For the reasons set forth below, we reject these arguments and affirm the district court's forfeiture order.

## A.

Prasad contends that he did not "obtain" the entire $1,193,440.87, as that term is used in the criminal forfeiture statute, because he eventually paid portions of that money to the H-1B beneficiaries. Section 982(a)(6)(A)(ii)(I) mandates forfeiture of the property a defendant "obtained directly or indirectly from" the criminal offense. 18 U.S.C. § 982(a)(6)(A)(ii)(I). To construe the term "obtain," we start with its plain meaning. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). The plain meaning of the term "obtain" is "to come into possession of" or to "get or acquire." Obtain, *Oxford English Dictionary* (2d ed. 1989); *see also Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017) (construing "obtained" as used in 21 U.S.C. § 853(a)(1)'s virtually identical criminal forfeiture provision according to its plain meaning, i.e., "to come into possession of" or to "get or acquire" (citations omitted)). Because the term "obtained" can be interpreted according to its plain meaning, that reading controls. *See United States v. Harrell*, 637 F.3d 1008, 1012 (9th Cir. 2011).

Here, Prasad possessed the full $1,193,440.87, including the portions he paid to the H-1B beneficiaries, because he received and had control over the money before he paid a

percentage of it to employees. Control over property connotes possession of it. *See* Possession, *Black's Law Dictionary* (11th ed. 2019) ("In common speech a man is said to possess or to be in possession of anything of which he has the apparent control . . . ." (quoting Frederick Pollock & Robert Samuel Wright, *An Essay on Possession in the Common Law* 1–2 (1888))). The end-clients paid $1,193,440.87 to Maremarks for the H-1B beneficiaries' work. The government traced those payments to Maremarks' bank account and established that Prasad was the sole signatory on that account. Thus, Prasad had control over the $1,193,440.87 that went through the account.[8] *See* Signatory Authority, *Black's Law Dictionary*, *supra* (defining "signatory authority" as "[l]icense to make a decision, esp. to withdraw money from an account").

Under our precedent, it does not matter that Prasad paid portions of the $1,193,440.87 to the H-1B beneficiaries and at that point no longer possessed those portions. *See United States v. Newman*, 659 F.3d 1235, 1243 (9th Cir. 2011), *abrogated on other grounds by Honeycutt*, 137 S. Ct. 1626. We have explained that "[r]equiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent." *Id.* at 1243 (citation omitted) (construing 18 U.S.C. § 982(a)(2)'s materially similar criminal forfeiture provision). Thus, 18 U.S.C. § 982(a)(6)(A)(ii)(I) only

---

[8] Prasad asserts that his payment of portions of the $1,193,440.87 to the H-1B beneficiaries indicates he did not possess the entire $1,193,440.87, but the very act of payment establishes that he did control, and thus possess, the money.

requires that the government show that the defendant had possession of the property at some point to establish that the defendant "obtained" it. *See id.*

In sum, because Prasad controlled the $1,193,440.87, he possessed it and so necessarily had obtained it. We therefore conclude that Prasad "obtained" the $1,193,440.87 that the end-clients paid to Maremarks.

## B.

Prasad argues that even if he "obtained" the $1,193,440.87, the "proceeds" that he "obtained" are limited to his profit, which excludes the amount he paid to the H-1B beneficiaries for their work for end-clients. As Prasad correctly notes, "'[p]roceeds' can mean either 'receipts' or 'profits' . . . in ordinary usage." *United States v. Santos*, 553 U.S. 507, 511 (2008) (plurality opinion) (citations omitted) (construing the term "proceeds" in the federal money-laundering statute, 18 U.S.C. § 1956);[9] *see also United*

---

[9] *Santos*, a plurality decision, construed the term "proceeds" within the elements of the money laundering statute and, because the term was ambiguous, it applied the rule of lenity to conclude that "proceeds" was limited to profits. 553 U.S. at 514–15. Justice Stevens concurred with the plurality decision, but only on the scope of the money laundering statute as applied to the specific facts before the Court, and he stated concerns that, under the facts presented, interpreting "proceeds" as receipts could lead to a merger problem by allowing two crimes to arise from the same conduct. *See id.* at 525–28 & n.7 (Stevens, J., concurring). *United States v. Christensen* rejected the argument that *Santos* compelled us to construe the term "proceeds" in the RICO forfeiture statute to mean "profits." 828 F.3d 763, 823 (9th Cir. 2015) ("The issue in *Santos* was quite different, however. The interpretation of 'proceeds' in *Santos* affected the scope of criminal liability for money laundering, not the amount of forfeiture."). Here, we are, as in *Christensen*, asked to construe the term "proceeds" in the criminal forfeiture statute; once

*States v. Peters*, 732 F.3d 93, 99 (2d Cir. 2013) (concluding that the term "proceeds" in 18 U.S.C. § 982(a)(2) could mean either "profits" or "receipts" in "ordinary usage," and rejecting argument that *Santos* compelled construing "proceeds" as profit (citation omitted)).

But a statutory term may not be read in isolation and must instead be construed in its proper context within the statute. *See Mont v. United States*, 139 S. Ct. 1826, 1833–34 (2019); Antonin Scalia & Bryan A. Garner, *Reading Law* 167 (2012). And because the term "proceeds" is ambiguous, we must look to "other sources" to determine its meaning. *See Nader*, 542 F.3d at 717 (citation omitted). Considering the term "proceeds" in the context of the forfeiture statute, the statute's punitive purpose, and our prior construction of virtually identical criminal forfeiture provisions, we conclude that the term "proceeds" extends to receipts and is not limited to profit.

### 1.

We first consider the term "proceeds" in the context of the forfeiture statute. Section 982(a)(6)(A)(ii)(I) provides for forfeiture of the "*proceeds obtained* . . . from the commission of the offense." 18 U.S.C. § 982(a)(6)(A)(ii)(I) (emphasis added). Prasad argues that we should construe this statute as limiting forfeiture to "profits obtained" from the commission of the offense. "[O]btain" means "to come

---

again the holding in *Santos* does not affect the issue before us because "[f]orfeiture is an aspect of the sentence, not an element of the underlying crime," and thus there is no possibility of a merger problem. *Id.* at 822–23 (citing *Libretti v. United States*, 516 U.S. 29, 38–39 (1991)); *see also id.* at 824 (stating "[o]nly the desire to avoid a merger problem united the plurality and Justice Stevens in *Santos*" (internal quotation marks and citation omitted)).

into possession of" or to "get or acquire." *Honeycutt*, 137 S. Ct. at 1632 (citations omitted). "Profit" is "[t]he pecuniary gain in any transaction; the amount by which value acquired exceeds value expended." Profit, *Oxford English Dictionary*, *supra*. Thus, Prasad argues that we should construe the statute to limit forfeiture to "the pecuniary gain in any transaction, or the value acquired less the value expended" (i.e., profit) "that is acquired or which the defendant comes into possession of" (i.e., obtained).

But when, as here, a defendant possesses and controls the receipts of his criminal conduct but ultimately retains only a portion of those receipts for his own profit, Prasad's construction of "proceeds obtained" cannot be reconciled with the common meaning of "obtain"—to "come into possession of" or "acquire." *See Honeycutt*, 137 S. Ct. at 1632. Instead, Prasad's construction of "proceeds" as profit would require us to construe "proceeds obtained . . . from the commission of the offense," *see* 18 U.S.C. § 982(a)(6)(A)(ii)(I), to mean "proceeds that are part of what the defendant obtained from the commission of the offense." Nothing in the statute supports this convoluted construction of "proceeds obtained."

Rather, in common English usage, we say that a person obtains, or gets, or acquires revenue or income (i.e., receipts), which may ultimately result in profit after accounting for costs. *See* Profit, *Black's Law Dictionary*, *supra*. Indeed, "receipts" means "the amount, sum, or quantity received," such as "money." *See* Receipts, *Oxford English Dictionary*, *supra*; Receipt, *Black's Law Dictionary*, *supra* (defining "receipt" as "income"); *see also* Proceeds, *Black's Law Dictionary*, *supra* (defining "proceeds" as "the amount of money *received* from a sale" (emphasis added)), *quoted in Casey*, 444 F.3d at 1076 n.4. Thus, the district

court's construction of "proceeds" as "receipts" is supported by the common meaning of the relevant statutory language.

The Sixth Circuit recently reached the same conclusion based on similar reasoning. *See United States v. Bradley*, 969 F.3d 585, 588–89 (6th Cir. 2020). In *Bradley*, the court rejected the defendant's argument that "forfeiture of a crime's 'proceeds,'" under 21 U.S.C. § 853(a)(1),[10] "does not include money received by the defendant from the crime but paid to coconspirators." *Id.* at 588. Instead, it held that the term "proceeds" in 21 U.S.C. § 853(a)(1) means receipts because the statute "holds defendants responsible for the 'proceeds' they 'obtained' through the conspiracy," *id.* at 588–89, and "it is beside the point whether the money stayed in [the defendant's] pocket (e.g., kept as profits) or went toward the costs of running the conspiracy (e.g., used to pay coconspirators)," *id.* at 589. Thus, the court concluded that "[§] 853(a)(1) asks only whether the defendant obtained the money," not what he did with it. *Id.* (citing *Newman*, 659 F.3d at 1243).

We conclude that Congress's use of the phrase "proceeds obtained" demonstrates that the focus of forfeiture is whether the defendant obtained the property from the commission of the crime, not whether the defendant made a profit based on what he later chose to do with that property. *See id.* at 588–89; *see also Newman*, 659 F.3d at 1243 (stating property is forfeitable regardless of whether the defendant "saves his stolen loot," "spends [it] on wine,

---

[10] 21 U.S.C. 853(a)(1), which is materially similar to 18 U.S.C. § 982(a)(6)(A)(ii)(I), requires forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a)(1).

women, and song," or even reinvests it "as part of the criminal enterprise" (citation omitted)).

Moreover, it would make little sense to construe "proceeds" as profit, as Prasad urges, because that construction would allow a defendant to defeat the United States' vested claim to property obtained from the commission of the crime by reinvesting that property into the criminal enterprise before his conviction, rather than pocketing it as profit. *See* 21 U.S.C. § 853(c) ("All right, title, and interest in property . . . vests in the United States upon the commission of the act giving rise to forfeiture . . . ."); *United States v. Lazarenko*, 476 F.3d 642, 647–48 (9th Cir. 2007).

In sum, while the term "proceeds" is ambiguous on its own, we must look to the entire text of a statutory provision when interpreting the meaning of a particular term. Here, placing "proceeds" in its proper context by interpreting it in light of the term "obtained" and 21 U.S.C. § 853(c) (as incorporated by 18 U.S.C. § 982(b)) supports that "proceeds" under 18 U.S.C. § 982(a)(6)(A)(ii)(I) denotes receipts.

**2.**

We also apply 18 U.S.C. § 982(a)(6)(A)(ii)(I) in light of its statutory purpose and conclude that construing "proceeds" to include receipts advances that purpose, while limiting "proceeds" to profit hinders it. We favor an interpretation of a statute that furthers and does not obstruct the statute's purpose. *Burns v. Stone Forest Indus.*, 147 F.3d 1182, 1184 (9th Cir. 1998) (citation omitted); Scalia & Garner, *supra*, at 63–64; *see also The Emily & The Caroline*, 22 U.S. (9 Wheat.) 381, 389 (1824) (rejecting construction of statute offered by claimants because that construction

would "render[] the law in a great measure nugatory[] and enable offenders to elude its provisions in the most easy manner," thereby frustrating the law's purpose).

Section 982 provides for "criminal forfeiture," which "is designed to punish the offender." *United States v. Bajakajian*, 524 U.S. 321, 332 (1998); *United States v. Beecroft*, 825 F.3d 991, 999 (9th Cir. 2016) ("[A] general hallmark of criminal forfeiture orders—distinguishing them from orders of restitution—is that they indeed serve to punish the defendant." (citations omitted)), *abrogated on other grounds by Honeycutt*, 137 S. Ct. 1632, 1635. "Forfeitures help to ensure that crime does not pay:  They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." *Kaley v. United States*, 571 U.S. 320, 323 (2014) (citations omitted).

A criminal forfeiture that simply divests a defendant of the profits from his crime has little deterrent value. Construing "proceeds" as profits would allow a defendant to avoid forfeiture of certain property obtained from his criminal activity by reinvesting it in the criminal enterprise or using sophisticated accounting practices to conceal profits. *See Peters*, 732 F.3d at 101.  Therefore, limiting "proceeds" solely to profits would hinder 18 U.S.C. § 982's punitive purpose and so is a construction that should be avoided. *See The Emily & The Caroline*, 22 U.S. (9 Wheat.) at 388–89 (rejecting interpretation that would undermine the statute's purpose).  On the other hand, construing "proceeds" to include receipts advances 18 U.S.C. § 982's purpose, and thus is the preferred construction.  *See Burns*, 147 F.3d at 1184–85.

**3.**

Defining the term "proceeds" in 18 U.S.C. § 982(a)(6)(A)(ii)(I) to include receipts is consistent with our past interpretation of the term "proceeds" as used in similarly worded criminal forfeiture provisions, including: 18 U.S.C. § 982(a)(2), 18 U.S.C. § 1963(a)(3), and 21 U.S.C. § 853(a)(1). A court's prior construction of statutory language is relevant to the meaning of a similarly worded provision. *See United States v. Durcan*, 539 F.2d 29, 31 (9th Cir. 1976) (concluding that prior construction of similar statutory language from a different statutory provision controlled); Scalia & Garner, *supra*, at 322 (stating that the prior construction canon applies "to interpretations of the same wording in related statutes").

First, we have held that "proceeds" means receipts for purposes of 18 U.S.C. § 982(a)(2).[11] *See Newman*, 659 F.3d at 1243. The forfeiture provision in 18 U.S.C. § 982(a)(2) is materially identical to the forfeiture provision here.[12] In *Newman*, we reasoned that "proceeds" goes beyond the money in the defendant's possession when apprehended and includes amounts that "the criminal spent . . . as part of the criminal enterprise." 659 F.3d at 1243. "Congress intended [that criminal defendants] disgorge their ill-gotten gains,

---

[11] The Second Circuit has also concluded that "proceeds" means receipts under 18 U.S.C. § 982(a)(2). *See Peters*, 732 F.3d at 101–02.

[12] Section 982(a)(2) mandates forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of" certain specified crimes. 18 U.S.C. § 982(a)(2). Our construction of § 982(a)(2) is particularly noteworthy because materially similar provisions within the same statute should be construed in the same way. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993).

even those already spent." *Id.* (quoting *Casey*, 444 F.3d at 1074). Thus, it did not matter that one of the defendants, who participated in a mortgage fraud conspiracy, "personally profited very little" or that the banks had recovered part of the loan amounts. *Id.* at 1238, 1244 (citation omitted). The "proceeds" of the offense equaled the entire amount of the loans the defendant fraudulently obtained, i.e., his receipts. *Id.* at 1244.

Second, we have held that RICO's criminal forfeiture provision, 18 U.S.C. § 1963(a)(3), also extends beyond profits to receipts.[13] *Christensen*, 828 F.3d at 822 (holding that "'proceeds' in the RICO forfeiture statute refers to gross receipts rather than net profits"). In *Christensen*, we explained that construing the term "proceeds" broadly to include receipts frees the government from "the unreasonable burden . . . of proving net profits" by demonstrating "what the defendant's overhead expenses were." *Id.* (quoting *United States v. Simmons*, 154 F.3d 765, 771 (8th Cir. 1998)); *see also Peters*, 732 F.3d at 101 (stating that construing "proceeds" under 18 U.S.C. § 982(a)(2) to mean profits would incentivize "criminals to employ complicated accounting measures to shelter the profits of their illegal enterprises" (citation omitted)). Additionally, in *Christensen*, we considered the punitive purpose of RICO's forfeiture provision and concluded that construing "proceeds" to encompass receipts effectuates that purpose, while limiting it to profits would not. 828 F.3d at 822–24.

---

[13] Section 1963(a)(3), which is very similar to § 982(a)(6)(A)(ii)(I), requires forfeiture of "any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962." 18 U.S.C. § 1963(a)(3).

Accordingly, we held that "proceeds" under RICO's criminal forfeiture provision means receipts. *Id.* at 822.

Third, we construed the forfeiture provision of the Controlled Substances Act, 21 U.S.C. § 853(a)(1), to require forfeiture of the receipts of illegal drug transactions.[14] *Casey*, 444 F.3d at 1076 & n.4 (defining the term "proceeds" in the forfeiture provision as "the amount of money received from a sale" (quoting *Black's Law Dictionary* 1242 (8th ed. 1999))). In *Casey*, the defendant was convicted of distribution of ecstasy where his only role was serving as a "middleman" who "transferred the [$7,000] he received to a third party who actually shipped the drugs." 444 F.3d at 1072–73. The defendant argued that the "proceeds" he obtained were limited to the $200 he made as profit—not the $7,000 he received and transferred (i.e., the receipts). *Id.* at 1072, 1076 n.4. We disagreed. *Id.* at 1073–74. "Even though [the defendant] no longer ha[d] the drug proceeds," we reasoned that the defendant "received funds that should never have been available for him to spend." *Id.* at 1073–74.

We again emphasized the punitive nature of criminal forfeiture in *Casey*. *Id.* Construing "proceeds" to encompass the entirety of the defendant's receipts "negates any benefit [the defendant] may have received from the money, ensuring that, in the end, he does not profit from his criminal activity." *Id.* at 1074. Ultimately, we held that the "proceeds" were "the $7,000 [the defendant] received in the illegal drug transaction." *Id.* at 1076. In other words,

---

[14] Under § 853(a)(1), the court must order forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" certain drug offenses. 21 U.S.C. § 853(a)(1).

21 U.S.C. § 853(a)(1) mandated forfeiture of the receipts of the defendant's crime. *See id.*

In sum, we have consistently held that "proceeds" means receipts when used in criminal forfeiture provisions that are materially similar to 18 U.S.C. § 982(a)(6)(A)(ii)(I), specifically 18 U.S.C. § 982(a)(2), 18 U.S.C. § 1963(a)(3), and 21 U.S.C. § 853(a)(1). We see no reason to make § 982(a)(6)(A)(ii)(I) an outlier, especially considering the statutes' nearly identical language and shared punitive purpose. *United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (en banc) ("[C]ourts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter." (citations omitted)).

**4.**

Finally, we recognize that Congress referred to "gross proceeds," "gross receipts," and "proceeds" within the various forfeiture provisions under 18 U.S.C. § 982(a). Typically, under the presumption of consistent usage and material variation, a material change in terminology within the same statute denotes a change in meaning. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (citation omitted)); Scalia & Garner, *supra*, at 170. Applying this presumption here could suggest that "proceeds" is limited to profits, given that "gross proceeds" and "gross receipts" more readily invoke the concept of receipts than the term "proceeds" alone.

But this presumption "is not rigid and readily yields" to context "to meet the purposes of the law." *Sun v. Ashcroft*,

370 F.3d 932, 939–40 (9th Cir. 2004) (quoting *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932)). Additionally, the presumption of consistent usage and material variation loses force when the relevant terms were added on different occasions, as is the case here.[15] *See Kniess v. United States*, 413 F.2d 752, 754 (9th Cir. 1969) (stating that "phrases employed by one legislative draftsman are an unreliable clue as to that which another writer, at a different point in time, . . . may have intended by the use of slightly different terms"); Scalia & Garner, *supra*, at 172–73. Because, as we have discussed in detail, the purpose of 18 U.S.C. § 982 reveals that "proceeds" means receipts, and the relevant terms were added at different times, the presumption is overcome here.

\*     \*     \*

The term "proceeds" under 18 U.S.C. § 982(a)(6)(A)(ii)(I) could mean either profits or receipts. However, in the context of the entire text of the provision, the punitive purpose of 18 U.S.C. § 982, and our prior construction of substantially similar criminal forfeiture

---

[15] Congress individually added each of 18 U.S.C. § 982(a)'s forfeiture provisions. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 6463(c), 102 Stat. 4374, 4375 (codified at 18 U.S.C. § 982(a)(1)); Act of Aug. 9, 1989, Pub. L. No. 101-73, § 963(c), 103 Stat. 183, 504 (1989) (codified at 18 U.S.C. § 982(a)(2)); Crime Control Act of 1990, Pub. L. No. 101-647, § 2525(b), 104 Stat. 4789, 4835, 4874 (codified at 18 U.S.C. § 982(a)(3)); Anti Car Theft Act of 1992, Pub. L. No. 102-519, § 104(b), 106 Stat. 3384, 3385 (codified at 18 U.S.C. § 982(a)(5)); Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, § 249(a), 110 Stat. 1936, 2020 (codified at 18 U.S.C. § 982(a)(7)); Act of Sept. 30, 1996, Pub. L. No. 104-208, § 217, 110 Stat. 3009, 3009–573 (codified at 18 U.S.C. § 982(a)(6)); Telemarketing Fraud Prevention Act of 1998, Pub. L. No. 105-184, § 2, 112 Stat. 520, 520 (codified at 18 U.S.C. § 982(a)(8)).

provisions, we conclude that the better construction is that "proceeds" means receipts. The term "proceeds" is not limited to Prasad's profits. Rather, Prasad must forfeit the receipts he "obtained directly or indirectly from" his commission of visa fraud. 18 U.S.C. § 982(a)(6)(A)(ii)(I). Thus, the district court did not err by including the portions of the $1,193,440.87 that Prasad received from the end-clients and paid the H-1B beneficiaries as wages in its calculation of the "proceeds" subject to forfeiture.

## C.

Prasad also asserts that the amounts he paid to the H-1B beneficiaries were "legitimate" and not "derived from unlawful activity," even if the "visa applications" he submitted were fraudulent. It appears Prasad is arguing that because the H-1B beneficiary employees performed legitimate work for end-clients, the portions of the money that Maremarks received for that work and subsequently paid to the beneficiary employees should not be considered proceeds derived from his criminal conduct.

But § 982(a)(6)(A)(ii)(I) requires forfeiture of "the proceeds obtained *directly or indirectly from*" Prasad's commission of visa fraud. 18 U.S.C. § 982(a)(6)(A)(ii)(I) (emphasis added). "From" means a "ground, reason, cause, or motive: because of, on account of, owing to, as a result of, through." From, *Oxford English Dictionary*, *supra*. "Direct" means "stemming immediately from a source." Direct, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2004); *see also* Direct, *Oxford English Dictionary*, *supra* (defining "direct" as "effected or existing without intermediation or intervening agency; immediate"); Direct, *Black's Law Dictionary*, *supra* (defining "direct" as "immediate"). And "indirect" means "not direct." Indirect, *Oxford English Dictionary*, *supra*.

Congress's inclusion of the phrase "directly or indirectly" before "from" indicates that the unambiguous and plain meaning of the statute reaches broadly, extending beyond proceeds that stem directly or immediately from the criminal offense. *See Ass'n of Priv. Sector Colleges & Univs. v. Duncan*, 681 F.3d 427, 444 (D.C. Cir. 2012) (noting "directly or indirectly" is "extremely broad language" (quoting *Roma v. United States*, 344 F.3d 352, 360 (3d Cir. 2003))); *United States v. Gharbi*, 510 F.3d 550, 556 (5th Cir. 2007) (stating that the phrase "all property . . . obtained directly or indirectly" is "expansive"). Section § 982(a)(6)(A)(ii)(I) is therefore expansive, reaching all proceeds that a defendant obtained as a result of the crime.

Here, Prasad obtained the amounts he paid the H-1B beneficiaries that he employed to work for the end-clients as a result of his commission of visa fraud. Maremarks—acting through Prasad—entered contracts to provide the H-1B beneficiaries as workers for end-clients. The end-clients paid Maremarks $1,193,440.87 in exchange for the work the beneficiary employees performed under Maremarks' H-1B petitions. But Prasad fraudulently obtained H-1B status for these foreign workers; this status provided the only authorization for them to work in the United States, and it required that they work as Maremarks' employees. *See* 8 C.F.R. § 214.2(h)(1)(i), (h)(2)(i)(D)–(E). Consequently, the entire $1,193,440.87 that the end-clients paid Maremarks for work the H-1B beneficiaries performed was derived from Prasad's unlawful acquisition of each beneficiary's H-1B status through visa fraud.

Moreover, it was not happenstance that the end-clients paid Maremarks for the H-1B beneficiaries' work, rather than paying the beneficiaries directly. The H-1B beneficiaries could only work in the United States as

Maremarks' employees because Maremarks, through Prasad, served as the petitioner-employer filing the petitions seeking H-1B status on their behalf. *See* 8 C.F.R. § 214.2(h)(1)(i), (h)(2)(i)(D)–(E); *United States v. Kalu*, 791 F.3d 1194, 1198 (10th Cir. 2015). To maintain the H-1B beneficiaries' authorization to work in the United States under Maremarks' approved H-1B petitions, Maremarks had to exercise the right to control the H-1B beneficiaries' employment as their employer for the duration of the employment term specified in the petition. *2010 USCIS Memo*, *supra*, at 3–4.

At the time Prasad committed his acts of visa fraud, a workforce supplier, like Maremarks, had to pay the H-1B beneficiary's wages to establish that it had the right to control the H-1B beneficiary's employment. Thus, obtaining the money from the end-clients as payment for the services provided by Maremarks employees before paying portions of it to those H-1B beneficiary employees was a necessary part of Prasad's visa fraud scheme, and it ultimately facilitated his ability to obtain money from his commission of visa fraud. *See Nanda*, 867 F.3d at 526. Thus, Prasad obtained the $1,193,440.87 as the result of his criminal conduct.

We reject Prasad's argument that the portions he paid the H-1B beneficiaries "derived from" their legitimate work, not his commission of visa fraud, because it does not adequately explain how these portions are not "proceeds obtained *directly or indirectly* from" his visa fraud. 18 U.S.C. § 982(a)(6)(A)(ii)(I) (emphasis added). While Prasad's argument is unclear, he could be arguing that the work the beneficiaries performed was an additional link in the causal chain demonstrating that he did not obtain those amounts "directly" from his criminal activity. But § 982(a)(6)(A)(ii)(I) reaches beyond "proceeds obtained

directly" or immediately from the commission of the crime to "proceeds obtained," even indirectly, from the crime.

Here, the beneficiary employees' fraudulently obtained H-1B status authorized these employees to work for Maremarks' end-clients and earn the $1,193,440.87 Prasad obtained. We conclude that the money the end-clients paid for the work the beneficiaries performed was "obtained directly or indirectly from" Prasad's unlawful conduct. *See United States v. Warshak*, 631 F.3d 266, 332–33 (6th Cir. 2010) (holding that 18 U.S.C. § 982(a)(2) forfeiture provision reached "proceeds obtained" from money generated through "legitimate" sales because they "resulted 'directly or indirectly'" from the criminal offense).

Consequently, the full $1,193,440.87 constitutes "proceeds obtained . . . from the commission of" visa fraud. 18 U.S.C. § 982(a)(6)(A)(ii)(I).

## IV.

We affirm the district court's forfeiture order in the amount of $1,193,440.87 because that amount constitutes the "proceeds" Prasad "obtained directly or indirectly from" his commission of visa fraud. *See* 18 U.S.C. § 982(a)(6)(A)(ii)(I). Accordingly, § 982(a)(6)(A)(ii)(I) mandates forfeiture of these funds.

**AFFIRMED.**

---

CHRISTEN, Circuit Judge, concurring in the judgment:

I concur in the majority's decision to affirm the district court's forfeiture of the gross receipts of Prasad's crimes. I write separately because the majority relies on

18 U.S.C. § 982(a)(6)(A)(ii)(I),          and          I          rely          on
§ 982(a)(6)(A)(ii)(II).

The government sought forfeiture pursuant to both
subsections and the district court invoked both subsections
in its forfeiture order.  Subsection (A)(ii)(I) authorizes the
forfeiture of "proceeds" realized from a criminal violation,
but as the majority correctly observes, "proceeds" is an
ambiguous term that "can mean either 'receipts' or
'profits' . . . in ordinary usage."  Opinion at 13 (quoting
*United States v. Santos*, 553 U.S. 507, 511 (2008)
(plurality)).  In my view, this case is the wrong vehicle for
parsing the ambiguity in the statute's first subsection
because the parties' briefs do not distinguish between the
statute's subsections, much less contest the applicability of
(A)(ii)(II), and the circumstances of Prasad's particular
scheme easily warranted forfeiture of his gross receipts as
"property used to facilitate . . . the commission" of his
crimes under (A)(ii)(II).  For these reasons, I would affirm
the forfeiture order solely based on § 982(a)(6)(A)(ii)(II).[1]

Prasad was convicted of twenty-one counts of visa fraud
in violation of 18 U.S.C. § 1546(a) and two counts of
aggravated identity theft in violation of 18 U.S.C.

---

[1] I agree with the majority that "we rely on the parties to frame issues
for decision and assign to courts the role of neutral arbiter of matters the
parties present."  *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579
(2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).
This is why I would rely on (A)(ii)(II) to affirm the district court's
forfeiture order.  Subsection (A)(ii)(II) independently supports the
district court's forfeiture order and Prasad's brief leaves (A)(ii)(II)
unchallenged.  The government's brief does not advance the majority's
analysis of (A)(ii)(I); it defines the term "proceeds" by citing a civil
forfeiture statute without explaining why the civil provision should apply
here.  Because the forfeiture order is affirmable pursuant to (A)(ii)(II), I
would leave the interpretation of subsection (A)(ii)(I) for another day.

§ 1028A(a)(1). Prasad's visa fraud scheme involved filing petitions for H-1B status to recruit foreign workers and falsely representing that specific positions were available for those workers at the time the petitions were filed. In this way, Prasad created what the majority describes as a "bench" of unemployed H-1B beneficiaries. Opinion at 7–8. Prasad's scheme did not end once the foreign workers were placed in jobs within the United States. In order to acquire the H-1B visas, the governing regulations required Prasad to maintain actual employer-employee relationships between his company, Maremarks, and the H-1B beneficiaries. *See* 8 C.F.R. § 214.2(h)(1)(i), (h)(4)(i)(A)(1), (h)(4)(ii). Thus, Prasad received payments from the end-clients for each pay period and passed on part of those payments to the workers. Passing a portion of the funds through to the employees allowed Prasad to maintain the required employer-employee relationships with the "bench" of workers, and also allowed him to avoid scrutiny by USCIS. Thus, reinvesting part of each payment from end-clients was essential in order for his scheme to succeed as an ongoing enterprise.

The government's indictment notified Prasad that if he was convicted, it would seek forfeiture of "any property real or personal, that constitutes, or is derived from or is traceable to proceeds obtained directly or indirectly from the commission of said violation," § 982(a)(6)(A)(ii)(I), *or* "any property used, or intended to be used to facilitate the commission of said violation" pursuant to § 982(a)(6)(A)(ii)(II).

The government's Application for Forfeiture Money Judgment reiterated that it sought forfeiture under both § 982(a)(6)(A)(ii)(I) and (II), and the parties stipulated that the district court would make the factual determination regarding the forfeiture, rather than submitting the issue to

the jury. Fed. R. Crim. P. 32.2(b)(5); *see also* Fed. R. Crim. P. 32.2(b)(1)(B) (explaining that forfeiture determinations "may be based on evidence already in the record, including any written plea agreement, and on any additional evidence . . . submitted by the parties and accepted by the court as relevant and reliable").

The district court ordered Prasad to forfeit the gross receipts of his criminal enterprise: $1,193,440.87. This amount accounted for all the money Maremark received from the end-clients including the funds that Prasad kept as profits and the portion Prasad paid to the H-1B workers each pay period. The court entered the forfeiture judgment pursuant to both 18 U.S.C. § 982(a)(6)(A)(ii)(I) and (II).

Prasad briefly urges us to construe "proceeds" as "profits," and argues the district court erred by including in the forfeiture judgment the funds he passed on to his bench of workers. But Prasad overlooks that only § 982(a)(6)(A)(ii)(I) is limited to the "proceeds" of his crimes. The statute's second subsection sweeps more broadly and covers all property "used to facilitate, or [that] is intended to be used to facilitate, the commission of the offense of which the person is convicted." § 982(a)(6)(A)(ii)(II). Because Prasad continuously reinvested the money he received from end-clients to perpetuate his visa fraud scheme, the district court correctly ruled that the money Prasad paid to the H-1B employees was forfeitable pursuant to § 982(a)(6)(A)(ii)(II) as property used to facilitate the commission of his crimes.